## COFFINBERRY v. MADDEN, ADMINISTRATOR.

[No. 4,258.  Filed January 27, 1903.]

DESCENT AND DISTRIBUTION.—*Wearing Apparel.—Jewelry.*—A watch, a watch-chain, a ring, and a 'valuable shirt stud, and each of such articles of jewelry, are not wearing apparel of a decedent, within the meaning of §2417 Burns 1901, providing that the wearing apparel of a decedent may be distributed by the widow, or, if there be no widow, by the executor or administrator, among the nearest relatives.

From DeKalb Circuit Court; *W. M. Brown*, Special Judge.

Action by Alpheus W. Madden, administrator *de bonus non* of the estate of Herman N. Coffinberry, deceased, against William H. Coffinberry. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Daniel Fraser, W. H. Isham, J. E. Rose* and *J. H. Rose*, for appellant.

*Willis Rhoads, P. V. Hoffman* and *D. M. Link*, for appellee.

BLACK, P. J.—The appellee, administrator *de bonis non* of the estate of Herman N. Coffinberry, deceased, brought his action in replevin against the appellant William H. Coffinberry, who questions here the correctness of the court's conclusions of law upon the facts specially found, in substance as follows: In the year 1897, the appellee's intestate died in DeKalb county, leaving surviving him his widow and his two minor sons, one of them the appellant. At the time of his death the intestate had been living with his wife and children in the family relation. Immediately after his death, one John Yarde was appointed administrator of his estate, and he continued to act as such until the death of said Yarde, whereupon the appellee was appointed as administrator *de bonis non*. The estate of the intestate is insolvent. For some years prior to 1886, the intestate resided

in the town of Butler, in said county, where he was employed as trainmaster for the Wabash Railroad Company, receiving for his services in such employment $150 per month. In that year he removed to the city of Garrett, in that county, and there he entered the employ of the Baltimore & Ohio Railroad Company, as trainmaster, receiving for his services $190 per month. He continued in this employment until his election as auditor of that county in November, 1890, when he removed to Auburn, and entered upon the discharge of the duties of that office, which he held until November, 1894, when he removed to the city of Garrett, and there established a private bank. In 1886, when he was about to remove from Butler to Garrett, the employes of the Wabash Railroad Company presented him with a gold watch and chain, described in the complaint, as a gift from them to him. At the time of his death the watch was worth $75, and the chain was worth $15. At the time of his removal from Butler certain business men presented to him a ring set with small diamonds, which thereafter he caused to be reset in the watch-charm described in the complaint, which at the time of his death was worth $35, the diamonds constituting the greater part of the value. Prior to 1890 he purchased the ring described in the complaint,—a gold finger-ring,—which, at the time of his death, was worth $65. Prior to 1890 he purchased with his own means the diamond shirt stud described in the complaint, which at the time of his death was worth from $300 to $350, "and is now worth $500." It was a gold coil stud, containing a large solitaire diamond. From the time of the purchase thereof until his death he wore the diamond constantly, during which time he wore open-front shirts, and used the diamond stud for the purpose of fastening his shirt together; and it was on his person and was so used to fasten his shirt at the time of his death. From the time the watch and chain were given him, in 1886, he wore the same constantly; from the time he procured the watch-

charm until his death, he wore it constantly, attached to the chain; from the time he purchased the ring until his death, he wore it constantly; and the watch and chain, the watch-charm, and the ring were on his person at the time of his death. From the time he procured these articles until his death, he had no considerable property at any time exceeding the amount allowed him by law as exempt from execution. After his death, with the knowledge and consent of Yarde, administrator, Elizabeth K. Coffinberry, the widow of the intestate, assuming that she had authority under the statutes of this State to distribute said jewelry to the relatives of the intestate, on the ground of its having been wearing apparel of the intestate, did distribute all of the articles above described to the appellant, son of the ·intestate and said Elizabeth. Prior to the time the intestate became auditor, in 1890, he had no debts, and the debts which rendered his estate insolvent were contracted by him afterward. It was also found that since the property was so distributed to him by his mother as aforesaid, the appellant "has and still does retain the same, and has and still does claim title thereto."

The court stated as conclusions of law upon these facts, that at the beginning of this action the appellee was entitled to the possession of the diamond stud, the gold ring with diamond setting, the gold watch and chain and the watch-charm, described in the complaint, a separate conclusion being stated as to each article; also that all the property described in the complaint was at the commencement of the action unlawfully detained by the appellant.

In our statute concerning decedents' estates, is the following: "Where a man having a family shall die, leaving a widow or minor child, the following articles shall be omitted in making the inventory, and shall not be considered as assets, viz.: First. All articles of apparel and ornament of the widow and of the children of the deceased. Second. The wearing apparel of the deceased; which shall be dis-

tributed at the discretion of the widow, or, if there be no widow, in the discretion of the executor or administrator, among the nearest relatives, unless otherwise legally directed to be disposed of by the deceased. Third. Bibles and school-books used in the family of such deceased. Fourth. All the provisions on hand, provided for consumption by the family." §2417 Burns 1901.

It is apparent from the special finding that the appellant's possession was derived from supposed conformity to this statute; and our decision, having due reference to the theory of the case in the trial court, must involve a construction of that statute, as did the decision of the trial court. The widow did not assume to take possession of the articles in question as her own property, to which she was entitled as widow, and the finding does not show title or right of possession, or any claim therefor in any person other than the appellant or the appellee. The appellant holds the articles distributed by the widow to him as a nearest relative, upon the assumption that they were part of the "wearing apparel of the deceased," within the meaning and intent of the statute above quoted, and we are required to decide whether or not they constituted such "wearing apparel." This is not a technical phrase "having a peculiar and appropriate meaning in law," and it is to be taken in its "plain or ordinary and usual sense." §240 Burns 1901.

The word "apparel" and the phrases "wearing apparel" and "necessary wearing apparel" occur in statutes having various general purposes, as statutes relating to exemption from seizure on execution, and statutes concerning duties on imports, and they have been variously interpreted by the courts. We are not here influenced in our decision by any consideration as to whether or not any of the articles was necessary or more or less useful to the deceased, or as to whether or not it was intrinsically of great or little value, except as its expensiveness, considered in connection with its use, makes the chief characteristic that of an ornament.

We may properly derive some aid from the context, by observing that in the first clause of the statute "all the articles of *apparel* and *ornament*" of the widow and children are exempted, while in the second clause merely the "wearing apparel" of the deceased is exempted. Though an article may unquestionably be a part of the wearing apparel of a man or a woman which may be regarded as ornamental, or as serving some use in addition to that of ordinary vesture or clothing, yet if the chief and distinguishing characteristic of an article be to serve as an ornament, or to serve as a mechanism, any other purpose than that of clothing or part of the clothing for the body or some portion of the body, it can hardly be regarded as coming within the meaning of "wearing apparel," in the plain or ordinary and usual sense. No question has been presented in this case as to the right to seize, on a writ of replevin, articles actually worn on the person of the defendant at the time of the service of the writ.

*In re Jones,* 97 Fed. 773, was a case in bankruptcy. The court, professedly following the most liberal interpretation of the exemption statute of Wisconsin, held that a gold watch and chain carried on the person in the mode of ordinary usage was within the meaning of the phrase "all wearing apparel," and was therefore exempt. See, also, *Stewart* v. *McClung,* 12 Ore. 431, 8 Pac. 447; 53 Am. Dec. 374; *Beckett* v. *Wishon,* 5 Ohio N. P. 155; *In re Steel,* 2 Flip. 324, 22 Fed. 1202; *Sellers* v. *Bell,* 36 C. C. A. 502, 94 Fed. 801.

In *Richardson* v. *Buswell,* 10 Metc. (Mass.) 506, 43 Am. Dec. 450, it was held that cloth and trimmings left at a tailor shop by a debtor, to be made into a coat necessary for him, were within a clause of a statute exempting from execution "the necessary wearing apparel of the debtor." See *Peverly* v. *Sayles,* 10 N. H. 356.

In *Frazier* v. *Barnum,* 19 N. J. Eq. 316, 97 Am. Dec. 666, the question being as to whether certain things were

subject to execution, all wearing apparel being so exempt by the law of the state, it was held that a valuable lace shawl was wearing apparel, but that rings and jewelry were not wearing apparel. See, also, *Towns* v. *Pratt,* 33 N. H. 345, 66 Am. Dec. 726; *Maillard* v. *Lawrence,* 16 How. (U. S.) 251, 14 L. Ed. 925.

*In re Graham,* 2 Biss. 449, was a petition by a bankrupt for an order directing the assignee to add certain articles to the list of exempted property. It was held that a watch, not being exempt by the law of the state (Wisconsin), did not properly come within the, discretionary articles contemplated by the bankruptcy act.

In *Rothschild* v. *Boelter,* 18 Minn. 361, a watch and chain were held not exempt from execution under the statute as "wearing apparel of the debtor and his family." It was said: "But that an article *may be* worn does not make it wearing apparel within this statute. The words are to be construed, in this case, according to the common and approved usage of the language (Gen. St. ch. 4, §1), namely, as referring to garments or clothing generally designed for wear of the debtor and his family."

In *Smith* v. *Rogers,* 16 Ga. 479, it was said that among the articles exempted from execution by statute, watches were not found, unless they came under the head of "wearing apparel." "It is doubtful whether they can be made to come under that head. If, however, they can, we think that not more than one can be made to do so. And one, and the best one," claimed by his wife, "the court allowed to be exempt in this case."

In *Gooch* v. *Gooch,* 33 Me. 535, it was said that a watch which a testator had been in the habit of carrying upon his person did not pass by a bequest of his wearing apparel. The court said: "The ordinary meaning of wearing apparel is vesture, garments, dress; that which is worn by or appropriated to the person."

In *Sawyer* v. *Sawyer,* 28 Vt. 249, under a statute by

which it was enacted that upon the death of the husband the widow should be allowed all her articles of apparel and ornament, and the wearing apparel of her husband, the court, per Bennett, J., said: "I should think it was the intention of the legislature to include in the terms, 'all the articles of apparel and ornament of the wife,' most, if not all the things which, at the common law, go to make up her paraphernalia, which, it is well understood, is of two kinds, clothing, bedding, etc., suitable to her condition in life, and secondly, her ornaments. But when, in contrast to this language, they simply give her the *wearing apparel* of her husband, I think the legislature intended the term should be used in a more restricted sense, and be confined to its popular meaning, and include only such articles as may be properly termed the clothing of the husband, in contradistinction to ornaments." The court sustained the county court in its holding that the watch, watch-key, watch-chain, and seals, and the finger-ring, and the sword and sword-belt were not to be deemed parts of the wearing apparel of the deceased husband, but that his epaulets and bosom pin were to be so considered. It was said: "Though a watch may have a further use than mere ornament, yet that is not enough to make it and its incidents wearing apparel. The finger-ring is peculiarly matter of ornament, and we are disposed to consider the sword and sword-belt but emblems of distinction worn on special occasions, and which were in no way attached to the wearing apparel, so as to become a part of it.    *    *  *    The epaulets were attached to the coat, which must be regarded as wearing apparel, and may well follow their principal. So with the bosom-pin; it is attached to the shirt, and serves to keep it in place, and there is no showing in the case that the pin was of an extravagant value, whatever effect such a showing should be permitted to have." Redfield, C. J., dissenting, regarded all the articles as exempt, except the watch, as to which he was in some doubt, but thought that

the practical construction of similar statutes had been to regard a lady's watch as part of her apparel and ornaments, and thus to belong to her, but that the husband's watch was part of the estate, and did not go to the widow.

· Although all the articles here in question were adapted to be worn on the person, we are of the opinion that none of them should be regarded as wearing apparel, within the meaning of the statute involved in the case. So far as the watch could be said to have been useful as well as ornamental, its use was not of such a character as to distinguish it as a part of the apparel. The watch-chain was an appendage belonging with the watch. The shirt stud did serve a useful purpose in connection with the clothing, when the shirt worn was of a particular kind, but its expensive diamond made it chiefly and distinctively an ornament. The ring and charm were beyond question articles of ornament.

Judgment affirmed.