Ellen Dessa Mokros, Appellant, v. James M. Blackman, Executor of Last Will and Testament of George T. Shimunok, Deceased, et al., Appellees.

Gen. No. 41,414.

Heard in the second division of this court for the first district at the October term, 1940. Opinion filed December 30, 1941.

NELSON, SLATER & BOODELL, of Chicago, for appellant; PETER B. NELSON, of Chicago, LYMAN G. WHEELER, of Milwaukee, Wisconsin, and LOUIS A. McLEAN, of Chicago, of counsel.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for certain appellees; JAMES T. HARRINGTON, of Milwaukee, Wisconsin, and ISAAC E. FERGUSON, of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff, Ellen Dessa Mokros, filed the complaint herein, in which she prayed that the will of the testator, George T. Shimunok, her brother, be construed to mean that said testator under the fourth clause of his will bequeathed his entire personal estate to her after the payment of the two $100 legacies mentioned in the second and third clauses of his will. The executor of decedent's will, plaintiff's two sisters, Ida Mary Burmeister and Emma Laura Nissen and the legatees under the second and third clauses of the will, were named as defendants. The decree entered by the trial court construed the will adversely to plaintiff's claim and she appeals.

The sole question presented is whether the trial court properly construed the fourth and fifth clauses of the testator's will.

The dispositive clauses of the will are as follows:

"*First:* I direct that all my debts and funeral expenses be paid as soon after my demise as may be convenient.

"*Second:* I give, devise and bequeath to Illinois Masonic Hospital Association the sum of One Hundred Dollars ($100.00).

"*Third:* I give, devise and bequeath to Ancient Craft Lodge No. 907, A. F. & A. M., the sum of One Hundred Dollars ($100.00), to be disbursed for charitable purposes under the direction of the master of said lodge.

"*Fourth:* I give, devise and bequeath to my beloved sister, Ellen Dessa Mokros, all the goods, chattels, papers, books and personal effects of which I may die seized or possessed.

"*Fifth:* All the rest, residue and remainder of my estate, both real, personal and mixed of every nature and description, I give, devise and bequeath to my beloved sisters, Ida Mary Burmeister, Emma Laura Nissen and Ellen Dessa Mokros, share and share alike, to have and to hold the same for their own proper use and behoof forever."

The decree found and adjudicated as follows:

"4. . . . That the complaint filed by the plaintiff and the answers thereto filed by certain of the defendants present the question whether upon a proper construction of the provisions of the last will and testament of said George T. Shimunok all of the personal property of the testator, now in the hands of the executor of his estate, as shown by the inventory filed in the Probate Court of Cook County, excepting only two bequests of $100 each, should be distributed by the executor to Ellen Dessa Mokros, the plaintiff herein, or whether said property should be distributed by the executor share and share alike to the three sisters of the testator, namely, Ellen Dessa Mokros, Ida Mary Burmeister and Emma Laura Nissen.

"5. That at the time the testator made his last will and testament and at the time of his death he owned no land or buildings; that at the time of his death all that he owned and possessed was taken into custody, in the first instance, by the plaintiff; that subsequently the plaintiff turned over 'to the executor the items enumerated by the executor in his inventory of personal property; that the articles taken by the plaintiff from the room where the testator resided were retained by the plaintiff; that the appraisers appointed by the Probate Court of Cook County reported no goods and chattels subject to appraisal.

"6. That the construction of said will urged by the plaintiff would render nugatory clause 5 of the will, whereby the testator bequeathed to his three sisters, share and share alike, 'all the rest, residue and remainder of my estate, both real, personal and mixed, of every nature and description.' That from the expressions used by the testator in his last will and testament, likewise from all of the evidence offered upon the trial of this cause, it cannot reasonably be assumed that the testator meant to disinherit his sisters Ida Mary Burmeister and Emma Laura Nissen in favor of his sister, Ellen Dessa Mokros.

"7. That, in view of the provisions of clause 5 of the will, the bequest made to the plaintiff by clause 4 of the will cannot reasonably be taken to include any of the items listed by the executor in his inventory of personal property, consisting of cash in banks, postal saving certificates, mortgage notes and bonds, shares of stock in building corporations, other securities and evidences of indebtedness; that upon a proper construction of the will in its entirety the bequest made to plaintiff by clause 4 of the will of 'all the goods, chattels, papers, books and personal effects of which I may die seized or possessed' must be taken in a limited and precise sense, as referring to the tangible personal belongings of the testator of which the plaintiff has already taken possession."

The only property of the testator that came into the hands of the executor consisted of cash on deposit in banks, a civil service retirement check, postal savings certificates, mortgage notes, mortgage bonds and stocks in building corporations, the total value of such assets being $13,165.35.

The decedent was admitted to the Bar in Wisconsin and practiced law there for a short time. He then entered the postal service in the Chicago Post Office in 1895 and remained in such service until he retired in 1931. After his retirement he traveled extensively and lived in Florida for several winters prior to his death. When he was not traveling or living in Florida he lived at the home of a Mrs. Cleary in Chicago. His three sisters were all married and lived in or near Milwaukee, Wisconsin.

The testator died October 6, 1937, and upon being advised of her brother's death plaintiff came to Chicago, went to his room at Mrs. Cleary's home, packed up "all his personal effects" and took them to her home. She did not turn these "personal effects" over to the executor. She then went to decedent's safety-deposit box in Chicago, to which she had a key, and

removed the contents thereof, as heretofore enumerated, kept same for about a week and then turned them over to the executor. She testified that the decedent entrusted her with a key to his safety-deposit box since 1921 but that she exercised her right of entry to the box on only one occasion during his lifetime; and that at that time, while her brother was away on a trip, he requested her to secure some papers from his box and deliver them to his attorney. She also testified that "he always had a key to my home . . . I had a room there for him." However, she did not testify that he ever occupied or slept in such room. She then testified that her brother "traveled considerably"; that "whenever he would come home he would always come up and see us"; that he would also go to see his sisters occasionally but quite often he would telephone them; and that his relations with all of his sisters were friendly and cordial.

Defendant Mrs. Emma Laura Nissen testified that she was a sister of the testator; that her relationship with her brother during his lifetime was very "harmonious"; that she lived with her mother during the latter's lifetime and that prior to her mother's death in 1924 her brother spent every weekend at their home; that subsequent to 1924 every time the decedent went to Milwaukee he called at her home, which was the old homestead; and that if he was in Milwaukee and could not visit her he would telephone.

John Burmeister testified that he was the husband of decedent's sister Ida Burmeister; that he had known decedent for forty years; that the decedent visited his home "every time he had a chance"; and that his wife was unable to be present at the trial because "she was very sick."

Plaintiff's theory, as stated in her brief, is that "the trial court erred in its construction of the will finding that the plaintiff was not entitled to the personal estate of the decedent under the fourth clause of the

will and that the court further erred in finding that the plaintiff had already possessed herself of the goods, chattels, papers, books and personal effects bequeathed to her under the fourth clause of said will.''

Her defendant sisters and the executor assert that ''to construe the will of George T. Shimunok in the manner urged by the plaintiff would disinherit two of the testator's sisters in favor of the third, with nothing in the will itself or in the evidence introduced at the trial to indicate that this was the testator's intention, therefore such a construction should be rejected.''

The primary rule in testamentary construction is to ascertain the intention of the testator from the four corners of his will and to give it effect if not in conflict with an established rule of law or public policy. In *Dahmer v. Wensler,* 350 Ill. 23, the court said at pp. 26 and 27:

''The cardinal rule of testamentary construction is to ascertain the intention of the testator and to give it effect unless the testator attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy. . . . The process of ascertaining that intention requires a consideration of all the provisions of the instrument taken as a whole and not of any particular part separated from the rest. (*Jordan v. Jordan,* 274 Ill. 251; *Black v. Jones,* 264 id. 548; *Eldred v. Meek,* 183 id. 26; *Ducker v. Burnham,* 146 id. 9; *Dickison v. Dickison,* 138 id. 541).''

The same general rule is stated in *Heitzig v. Goetten,* 347 Ill. 619, at p. 626:

'' . . . Where one construction of a will renders a portion of it meaningless and another gives effect to all the words used the latter should be adopted. (*Walker v. Walker,* 283 Ill. 11.) A fundamental and familiar rule in construing wills is to ascertain the intention of the testator from a consideration of the

whole will, and such intention must be given effect if not in conflict with an established rule of law or of public policy. . . . The whole scope of the will must be considered and every provision given due weight to ascertain the plan of the testator in the light of the facts and circumstances surrounding him, his family and property at the time the will was made.''

Plaintiff insists that the words ''all the goods, chattels, papers, books and personal effects'' as used in the fourth clause of the will have a comprehensive meaning and a definite legal significance, which meaning and significance must be given to them unless a clear intention to the contrary is apparent from the context of the will considered in its entirety; that under such clause the testator clearly intended that all of his personal property, both tangible and untangible, should pass to plaintiff; and that if the will is considered in the light of the surrounding circumstances, as it should be, it must appear that plaintiff was the most natural object of the testator's bounty.

It will be noted that, while the fourth clause of the will contained the provision, ''I give, devise and bequeath to my beloved sister, Ellen Dessa Mokros, all the goods, chattels, papers, books and personal effects of which I may die, seized or possessed,'' the fifth clause provided ''all the rest, residue and remainder of my estate, both real, personal and mixed of every nature and description, I give, devise and bequeath to my beloved sisters, Ida Mary Burmeister, Emma Laura Nissen and Ellen Dessa Mokros, share and share alike.'' Viewing the will as a whole, in our opinion the only reasonable construction that can be given to it is that it was the decedent's intention and plan that plaintiff was to have his tangible ''personal effects'' as distinguished from his intangible personal property contained in his safety-deposit box, in which all three sisters were to share alike. If the testator

had intended otherwise and meant that plaintiff should have all of his personal property, both tangible and intangible, he must have known, with his legal training, that his purpose would have been fully accomplished by the fourth clause of his will and that there was no necessity for the fifth clause since neither at the time his will was executed nor at the time of his death did he own any real estate or property of any kind other than the personal property heretofore referred to. As another clear indication of the intention of the decedent to have his three sisters share equally in his estate, except as to the two $100 legacies and his tangible ''personal effects,'' was the inclusion of plaintiff with her two sisters as beneficiaries under the fifth clause of the will. If he had intended that plaintiff should have all of his estate under the fourth clause why did he include her as a beneficiary along with her sisters in the fifth clause?

But plaintiff insists that she was the most natural object of decedent's bounty and as such the will should be construed as she contends. Is there anything in the will itself or in the evidence that even tends to show that she was the most natural object of his bounty? She attempted to show that she was the most natural object of his bounty by her testimony that during his lifetime he had a key to her home and that she kept a room therein for his use. But there is no evidence in the record that he ever used either the key or the room. We also have her testimony that the decedent furnished her with a key to his safety-deposit box. She does not claim that during his lifetime she had any interest in the contents of such safety-deposit box and she testified that the only time during his lifetime that she used her key to enter said box was as a matter of accommodation and convenience to her brother while he was away on a trip. This evidence is insufficient to show that plaintiff was any more the natural object of her brother's bounty than

were her two sisters. Even, according to plaintiff, decedent's relationship with her sisters was at all times friendly and cordial. According to Mrs. Nissen, her brother's relations with all three sisters were at all times harmonious. It is significant that in his will the testator referred to them collectively as his "beloved" sisters.

To construe the will as plaintiff urges that it should be construed the fifth clause thereof would have to be entirely disregarded and the bequests thereunder to his sisters Ida Mary Burmeister and Emma Laura Nissen would have to be considered as pure sham. There is no reason shown in the record why their affectionate brother would want to perpetrate such a hoax upon his sisters, Mrs. Burmeister and Mrs. Nissen. Looking at the whole scope of the will in the light of all the surrounding circumstances, we cannot believe that the testator intended to disinherit his sisters Mrs. Burmeister and Mrs. Nissen and the presumption is that he did not so intend. In *Pontius v. Conrad,* 317 Ill. 241, the court said at p. 246: "Another presumption which prevails in the interpretation of wills is against a construction which will have the result to disinherit the heir. The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture. When the testator intends to disinherit them he must indicate that intention clearly, either by express words or by necessary implication."

In its construction of the will the trial court did not ignore any of the words or clauses contained therein and we think it gave to all of the words and clauses of said will the effect clearly intended by the testator. If as already stated the construction urged by plaintiff were adopted the fifth clause of the will would have to be completely ignored.

Plaintiff admits that she took from the testator's room all of his "personal effects" and kept them, but

there is no evidence in the record as to what such effects consisted of or of their value. Apparently under her own interpretation of the fourth clause of the will she considered said effects as her own and did not turn them over to the executor but she did turn the contents of the safety-deposit box over to the executor voluntarily.

Much is said in plaintiff's brief as to the comprehensive meaning and legal significance of the words "goods," "chattels," "books," "papers" and "personal effects" as used in the fourth clause of the will. Plaintiff argues at length, quoting from several dictionaries and text books and from numerous authorities of this and other jurisdictions, that the foregoing words or terms include within their meaning money, stocks, bonds, notes and other evidences of indebtedness and that, therefore, the intangible personal property contained in his safety-deposit box was intended by the testator to go to her. It would serve no useful purpose to analyze, discuss or differentiate these quoted works and cases since we are convinced that, viewing the will in its entirety, the testator used said terms as descriptive of his tangible "personal effects." The question here is not what meaning might be attributed to one or more or all of these words used in some other actual or hypothetical context but rather what meaning was intended by the use of such words collectively in the fourth clause of the will. While it is true that the words "goods" and "chattels" under some circumstances and as used in some contexts would have a broad enough significance to include personal property such as was contained in the decedent's safety-deposit box, nevertheless we are impelled to hold that the trial court properly construed such words as referring only to the decedent's tangible "personal effects" as used in the fourth clause of testator's will.

From the words used in the various clauses of the will and the obvious general plan and purpose of same, the conclusion is irresistible that by the fourth clause of the will the testator meant to bequeath to plaintiff only his tangible personal goods, chattels, papers, books and personal effects of which she has already taken possession and that by the fifth clause of the will the testator meant to divide among his three sisters equally the cash in banks, postal savings certificates, bonds, notes, shares of stock and choses in action inventoried by the executor (after payment of debts, cost of administration and the cash bequests made by the second and third clauses of the will).

For the reasons stated herein the decree of the circuit court is affirmed.

*Decree affirmed.*

SCANLAN, P. J., and FRIEND, J., concur.