**BARTELS, Extrx., Plaintiff, v. BARTELS et, Defendants.**

Probate Court, Meigs County.

No. 16839.    Decided February 27, 1956.

Crow & Crow, Pomeroy, for plaintiff.

O'Brien & O'Brien, Pomeroy, for defendants Harold Duckworth and Eura Largent.

Cherrington & Cherrington, Gallipolis, for defendant, Walter Duckworth.

M. D. Webster, Pomeroy, for defendants Robert Duckworth, Sarah Duckworth, Wilbur Holter.

120

## OPINION

By BACON, J.

Action for construction of a will. Testatrix, Emma Duckworth, a teacher from 1903 until retirement several years ago, a spinster, died January 11, 1955. Her last will and testament was admitted to probate February 24, 1955, and is here set forth in its entirety.

IN THE NAME OF THE BENEVOLENT FATHER OF ALL, AMEN: I, Emma Duckworth, of the Village of Syracuse, County of Meigs and State of Ohio, being of sound and disposing mind and memory, do make, publish and declare this my Last Will and Testament, hereby revoking and making null and void all other last Wills and Testament by me made heretofore.

First. My Will is that all my just debts and funeral expenses be paid out of my Estate, as soon after my decease as shall be found convenient

Second. I give, devise and bequeath to my Nieces and Nephews as follows: Ruth Bartels the sum of $200. Garnet Bartels the sum of $200.00 Oneida Roller, the sum of $200.00, Agnes Duckworth White, $200.00, Richard Duckworth $200.00, Carl Duckworth $200.00, Millard Duckworth $200.00, Genevieve Duckworth Schneider, $200.00, Charles Rittman $200.00, Violet Duckworth Zeiher, Sum of $200.00, Eura Largent, $200.00, Harold Duckworth $200.00, Emma Pauline Eynon $200. Robert Duckworth $200.00 Annaeta Stacey, $200.00, Sarah Duckworth $200.00 Marcia Kerns $200.00, Ella May Holter $200.00, William Holter, $200.00 Presbyterian Church of Syracuse, $100.00, Neida Gibbs, $100.00, Eleanor Kay Schweider $100.00,

THIRD: I give devise and bequeath to Oneida Roller, my Ohio Power Stock. Also my Cedar Chest and contents.

FOURTH: I give, devise and bequeath to my Sister, Sydney Bartels, and my two Brothers Albert and        my Shares in Woodmere Cemetery Stock, and my Fire Mist Stock.

FIFTH: I give, devise and bequeath to my Sister Sidney Bartels, all of my household goods, and Equipment, to do with as she sees fit.

Sixth: I give, devise and bequeath to Walter Duckworth my Piano, absolutely and in fee simple.

Sevents: I give, devise and bequeath to My Sister Sydney Bartels, Albert Duckworth, and Robert Duckworth, my Two brothers, all of the rest and residue of my Estate, Share and Share alike,. in equal amounts, and in fee simple.

Eighth: It is my Will, that my Executrix shall pay the bequest in my WILL, from the Bonds made to me alone,. I do hereby Nominate and Appoint Sydney Bartels to be my Executrix, but if she should be deceased, at the time of my passing, then it is my WILL that Oneida Roller shall Serve as such Executrix.

In Testimony Whereof, I have set my hand to this, my Last Will and Testament at Pomeroy Ohio this 9th day of January in the year of our Lord, One Thousand Nine Hundred Fifty Four (1954

EMMA DUCKWORTH

The foregoing Instrument was signed by the said Emma Duckworth

in our presence and by her published and declared as and for her Last Will and Testament, and at her request, and in her presence, and in the presence of each other, we hereunto subscribe our Names as Attesting Witnesses, at Pomeroy, Ohio, this 9th day of January A. D. 1954.

MARGARET SEIDENABLE resides at Pomeroy, Ohio

CORA B. ROBERTS resides at Pomeroy, Ohio

In addition to the apparent errors, those of including the Presbyterian Church in bequests to "Nieces and Nephews" and in not naming one of the two brothers intended under the 4th Provision, the pleadings and the evidence disclose many latent ambiguities. Those germane to this action are:

(1) Who is entitled to the bequest of $200.00 made to Charles Rittman? Extrinsic evidence disclosed there is no nephew of Emma Duckworth by that name.

(2) Who is entitled to the bequest made to Sarah Duckworth, designated as a niece? Extrinsic evidence disclosed that the only niece by that name died without issue in 1951.

(3) Who is entitled to the bequest of $200.00 to William Holter, designated as a nephew? Extrinsic evidence discloses that there is no nephew of Emma Duckworth by that name.

(4) Who is the second of the two brothers referred to in the 4th Provision, the beneficiaries being named therein as "my Sister, Sydney Bartels, and my two brothers Albert and (blank)"—the name of the second brother being omitted? Extrinsic evidence was, of course, required to determine if possible the person intended.

(5) Who is the beneficiary last named in the 7th Provision, the beneficiaries named therein as "My Sister Sydney Bartels, Albert Duckworth, and Robert Duckworth, my Two brothers"? Extrinsic evidence discloses that Emma Duckworth had three sisters, two deceased, one living; and five brothers, one deceased in 1912, one deceased about 1918, one missing since 1925, two living at the time of the execution of the will and surviving the testatrix; that the only Robert Duckworth living at the time of execution of the will was nephew; that there was a brother who was usually known as "John Robert" "John R." or simply "John," that one of the five hereinbefore mentioned as deceased in 1912.

The general principles governing construction of wills were early established in Ohio, and one of the cases most cited as laying down the general rules is that of **Townsend's Executors v. Townsend, et al., 25 Oh St 477**, pertinent syllabi are:

1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

2. Such intention must be ascertained from the words contained in the will.

3. . . . . .

4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.

5. If a dispute arises as to the identity of any person or thing named in the will, extrinsic facts may be resorted to, insofar as they can be made ancillary to the right interpretation of the testator's words, but for no other purpose.

Resolving the ambiguities in the same order as hereinbefore stated, being also the same order they developed in the will, the court finds as to ambiguity headed (1), the bequest to Charles Rittman: Although there is no nephew named Charles Rittman, there is a nephew named Charles Duckworth. He resides at Rittman, Ohio. The court has no difficulty in determining that there was a misnomer by the scrivener and that said Charles Duckworth is the beneficiary of the bequest of $200.00.

As to the ambiguity headed (2), the bequest to Sarah Duckworth: To decide that the deceased niece, Sarah Duckworth, was the intended beneficiary would result in the lapse of that particular bequest of $200.00, said niece having died in 1951 without issue. But lapse of a bequest in a will is not favored where reasonable interpretation of the language of the will may avoid such lapse. Judge Lemert in **Rugg et al. v. Smith et al., 40 Oh Ap 101,** laid down several excellent rules helpful here, for instance: Only in case of total and irreconcilable repugnancy can any provisions of a will be rejected, also: Court should give effect, if possible, to every provision of will and not try to find reason for avoiding or rejecting any portion thereof, and: in considerating doubtful clauses of will, court will ascertain intention of testator, as language of such clauses may reasonably be interpreted in particular case. Extrinsic evidence discloses there is one other Sarah Duckworth, a grandniece. Further, included in the paragraph headed "Nieces and Nephews" are bequests in the sum of $100.00 each to two other grandnieces, Neida Gibbs and Eleanor Kay Schneider, who were not designated by their correct relationship. Although Sarah Duckworth was bequeathed $200.00, Sarah was the name of Emma Duckworth's mother, and plaintiff's decedent, Emma Duckworth, also had a deceased sister named Sarah, which could well be a reason to differentiate between the grandnieces. And Emma Duckworth bequeathed $200.00 to Emma Pauline Eynon, who was no relation but a namesake.

While the reasoning for the difference in the sums bequeathed may touch the realm of conjecture, it is not conjecture that Emma Duckworth attended the funeral of Sarah Duckworth, the niece, in 1951, whose name at time of death was not Duckworth but her married name of Stout. Unquestionably the testatrix was aware her niece was deceased at the time testatrix executed her will, and the court determines that Sarah Duckworth, daughter of Robert Duckworth, was the intended beneficiary of the bequest of $200.00.

As to ambiguity headed (3), the bequest to William Holter: There is no nephew of Emma Duckworth named William Holter. Extrinsic evidence discloses there is a Wilbur Holter, husband of Ella May Holter, and that there is a William Duckworth, a nephew of Emma Duckworth. William Duckworth will be the only nephew of testatrix disinherited unless a construction be placed upon the will that he was the person intended. Included in the extrinsic evidence admitted it was testified that Emma Duckworth told a friend she did not intend to leave "Billy" anything. The time and place of the statement was not fixed. No other evidence was offered that "Billy" was disfavored by his aunt. Such vague statement is insufficient to overcome the presumption that obtains that

testatrix did not intend to disinherit her nephew. Mokros v. Blackman, 312 Ill. App. 346, 38 N. E. 2d 514, In Re Hayes Will, 263 N. Y. 219, 188 N. E. 716. The presumption would be that testatrix intended all of her nieces and nephews would take, unless it clearly appears from the language of the will that her intention was otherwise. Schneller v. Schneller, 356, Ill. 89, 190 N. E. 121. The law favors William Duckworth for these reasons and the additional reason that the law favors blood relatives. Root's Estate, 187 Pa. 118. Further, the presumption would be against the testatrix singling out William Holter as the only spouse of all the married nieces and nephews of Emma Duckworth to receive a bequest. Particularly where the evidence is totally lacking that William Holter was in any especial favor of the decedent.

The court therefore determines that the bequest of $200.00 to William Holter was actually intended for William Duckworth, that just as the scrivener erred in the surname of William's brother, Charles, employing the erroneous "Rittman," so she erred in William's case, using the erroneous "Holter."

By the rulings heretofore made it will be noted that the validity of each and every provision of the paragraph Provision 2nd of the will is sustained, that each and every living niece and nephew of Emma Duckworth is provided a bequest of $200.00, in addition to bequests to three favored grandnieces included in that 2nd Provision headed "Nieces and Nephews" their correct relationship not being stated.

As to ambiguities under headings (4) and (5), the bequests under the 4th Provision, to "my Sister, Sydney Bartels, and my two Brothers Albert and (blank)"—and the bequests under the 7th Provision, the residuary clause, "to My Sister Sydney Bartels, Albert Duckworth, and Robert Duckworth, my Two brothers,": the court will treat these ambiguities together because the reasoning governing ambiguity (4) to a large extent governs the determination of ambiguity (5).

Actually there was greater difficulty in determining the ambiguities under headings (2) and (3), than in resolving the testatrix's intentions in the 4th and 7th provisions of her will. In (2) and (3) the description "Nieces and Nephews" was more remote from the names set forth, the beneficiaries were more numerous and rules of construction perhaps more difficult to apply. But in the 4th and 7th Provisions of the will, three equal shares are created, and, leaving out the names, the legatees are in each case, my sister and my two brothers. The descriptive language is used not once but twice.

Examination of the will itself reveals the testatrix assigned great importance to the ties of blood in naming her beneficiaries. The only non-relative named is Emma Pauline Eynon, namesake of Emma Duckworth. Apparently the scrivener was hazy as to the exact relationship Walter bore to the testatrix, it being noted that of 24 legatees Walter Duckworth is the only one not assigned some degree of relationship. It would appear the testatrix was influenced greatly by the degree of relationship each object of her bounty bore to her. Nieces and nephews received $200.00 each. Two of the three grandnieces received $100.00 each. The evidence is conclusive that the fruit of the womb of Sarah Duck-

worth, Emma's mother, were the most favored objects of the testatrix's bounty.

Who were the two brothers testatrix intended as her beneficiaries under the 4th Provision? The facts are that Emma Duckworth had five brothers: John Robert, who died in 1912, James, who died in 1918, Arthur, who disappeared in 1924, Albert and Walter, living at time of execution of the will and surviving the testatrix.

Since about 1924, then, at any time the testatrix used the words "my two brothers" in connection with a gift or disposition of property— would she be referring to her two brothers known to be dead? One deceased brother and the missing brother? One deceased brother and one living brother? One living brother and the missing brother? Or would Emma Duckworth by those words be referring to her two brothers living, capable of receiving, appreciating and enjoying the gift or property?

For all practical purposes, since 1924, the spinster, Emma Duckworth, would have been compelled to state that her family consisted of her sister, Sydney Bartels, and her two brothers, Albert and Walter.

The defendant, Robert Duckworth, contends that, qualifying as the only living Robert Duckworth, that the testatrix meant to say in the 7th Provision, the residuary clause, "to My Sister Sydney Bartels, Albert Duckworth" **my brother** "and Robert Duckworth" **my nephew.** Such a construction would not only do violence to the word "brothers" but also to the word immediately preceding "two." This would be contrary to the rule that no words employed by the testator may be ignored. Davidson v. Davidson, 2 Ill. 2d 197, 117 N. E. 2d 769. And that effect must be given to every word of a will. **Dean v. Hart, 23 Abs 617.** That all parts of the will must be construed together, and effect, if possible, given to every word contained in it. **Townsend's Executors v. Townsend, 25 Oh St 477.** No language used by the testator is treated as surplusage or rendered void or insignificant. Stites v. Gray, 4 Ill. 2d 510, 123 N. E. 2d, 483.

As hereinbefore pointed out, the words "my Two Brothers" appear not once, but twice. It must be regarded as significant that both times they appear in connection with the words "my Sister, Sydney Bartels" said Sydney Bartels bearing the same degree of relationship to testatrix as Albert Duckworth and Walter Duckworth. So that to sustain Robert Duckworth's contention would also do violence to the rule that words occurring more than once in a will are presumed to be used always in the same sense, unless a contrary intention appears from the text of the whole instrument, or unless the words are applied to different objects. 28 R. C. L. 222, 6 R. C. L. Sup. 1711.

Robert Duckworth offered evidence that the defendant, Walter Duckworth, had received from Emma Duckworth certain real estate with the implication that such gift was an advancement of considerable value. The difficulty is that advancements do not apply where a decedent died testate. In fact, such evidence shows the brother, Walter, was a favored object of testatrix's bounty and that it is not likely she would virtually disinherit him by her will. Particularly, where the evidence also shows

that Emma Duckworth at one time or another stated she intended to leave "Bobby" (Robert Duckworth) the old homestead, but in fact during her lifetime deeded same to Albert Duckworth, her brother, which demonstrates again the affection for a brother prevailed over that for a nephew.

Conclusive it is that the sister, Sydney Bartels, and the two brothers, Albert and Walter, were the favored objects of Emma Duckworth's bounty. Testatrix conveyed the old homestead to Albert, a house and lot in Gallia County to Walter, and a house and lot in Syracuse to Sydney, all without consideration other than love and affection for her brothers and sister. Further, testatrix purchased during the years 1944, 1945 and 1946 certain U. S. Savings Bonds, arranging by P. O. D. or alternate payee clauses that in the event of her death the proceeds become payable to her sister and two brothers. Sydney Bartels as to savings bonds in the total sum of $3,800.00, Albert Duckworth as to bonds in the total sum of $3,200.00, and Walter Duckworth as to bonds in the sum of $4,000.00.

Certain it is also that testatrix knew like the face of the clock the extent of her estate. The 8th Provision is significant, especially when it is considered that for all practical purposes decedent's estate consisted of U. S. Savings Bonds in the sole name of Emma A. Duckworth in the total sum of $16,119.50. The testatrix specifically requests that the bequests contained in the 2nd Provision of her will (totalling $4,100.00) be paid solely from the proceeds of these bonds. Clearly she had in mind that there were bonds not in her name alone, and practically expresses her desire that the alternate payees, her sister and two brothers, should enjoy the proceeds thereof in the event of her death. By implication testatrix has practically mentioned the names Sydney Bartels, Albert Duckworth and Walter Duckworth in the 8th Provision.

The defendants, Harold Duckworth and Eura Largent, claim that Emma Duckworth meant a deceased brother under the 7th Provision of the will, that by "Albert Duckworth, and Robert Duckworth, my Two brothers," she meant as to the latter their father, John Robert Duckworth. This is unlikely. The certificate of birth of this brother, who was killed in a mine accident in 1912, in the records of the Meigs County Probate Court, defendant, Harold Duckworth's Exhibit "A," show R. J. Duckworth born December 1, 1877, father Adam Duckworth. mother Sarra Curtin. However, all witnesses who testified concerning him state he was known as "John," "John R." or "John Robert.". Further, defendant, Walter Duckworth's Exhibit "A," a marriage record of the Meigs County Probate Court shows John R. Duckworth, born December 1, 1877, married Mary Grueser; and his Exhibit "B," a Meigs County Birth Record, shows an unnamed child was born March 3, 1905 to John Duckworth and Mary Grueser.

Harold Duckworth and Eura Largent claim operation of the antilapse statute, §2107.52 R. C., which gives to the issue of a legatee related to testator, when the legatee is deceased at time of the will's execution or the death of the testator, the bequest involved. It is apparent however, that this case is governed by the rule laid down in Eckerle v. Hilerich,

9 Ky. L. Rep. 723, construing a like anti-lapse statute, deciding that a child of a person deceased at the date of the will is not entitled to take where the context shows that the naming of such deceased person in the will was mere inadvertence. Later Kentucky cases state that (construing an anti-lapse statute such as §2107.52 R. C.) before such statute can apply it must be first determined whether the testator meant to include persons dead at the date of the will in his description of the legatees therein. Fuller v. Martin 96 Ky. 500, 92 S. W. 315; Barnhill v. Sharon, 135 Ky. 70, 121 S. W. 983. **Syllabus 4 in Kelley, ex'r. v. Talifer, et al., 31 Abs 602,** enunciates the same rule, stating: The right of issue of a deceased child to take its parent's share under §10504-73 GC (§2107.52 **R. C.**), is based upon the fact that a devise was in fact made to the deceased child of the testator.

There are other strong reasons why the court must find that Walter Duckworth was intended by Emma Duckworth as one of the two brothers in Provisions Four and Seven in her will. Degrees of relationship of a beneficiary exert some influence in determining testator's intention for the purpose of construing his will. Runyan v. Rivers, 99 Ind. App. 680, 192 N. E. 327. The presumption obtains that Testatrix did not intend to disinherit one of her two surviving brothers. Mokros v. Blackman, 312 Ill. App. 346, 38 N. E. 2d 514. The presumption would be that she intended both of her two living and surviving brothers to take, unless it clearly appears from all the language of the will that her intention was otherwise. Schneller v. Schneller, 356 Ill. 89, 190 N. E. 121.

One of the attesting witnesses, Margaret Seidenabel, testified concerning what transpired at the execution of the will. Briefly, the scrivener selected by Emma Duckworth, sought use of the Court House lounge because Emma Duckworth's physical condition precluded her climbing the stairs to the scrivener's office. The testatrix recited to Cora Roberts, the scrivener, in the lounge the details concerning the bequests and the objects of her bounty. Cora Roberts made notes. went to her office, typed the will, and returned with it to the lounge. Testatrix and Cora Roberts conversed for about 20 minutes, but Margaret Seidenabel recalls nothing of the conversation. The will was then duly executed. Concerning the will it is significant that Margaret Seidenabel testified as follows: On direct examination:

Q. After Cora returned with the will, what did you observe at that time.

A. We sat and talked, she had the will, but I couldn't say she read it.

Q. Emma had the will in her possession?

A. Yes.

Q. How long would you say Emma and Cora discussed the will in your presence?

A. I wouldn't know the exact time but roughly around twenty minutes, something near that.

On cross examination by Henry Cherrington:

Q. You don't know whether she read it or not?

A. She had it in her possession, and looked at it, I do know that.

On Cross examination by M. D. Webster:

Q. Then you were there when Miss Duckworth was looking over the will or talking to Mrs. Roberts prior to the time it was signed?

A. Yes.

Q. Do I understand that was about twenty minutes?

A. I imagine about that length of time.

Q. During this period of time did Miss Duckworth have that will in her hands?

A. Yes.

Q. Did it appear she was reading it?

A. She was looking at it.

The Court concludes that while Emma Duckworth looked over the will and apparently it satisfied her, she did not read it with sufficient concentration that she caught the errors of misnomer in the surnames of Charles Duckworth and Charles' brother, William, the omission of Walter's name in the 4th Provision, and the misnomer of the given name of Robert for Walter in the 7th.

It could be added that the will itself is evidence that the degree of relationship motivated the disposition made by Emma Duckworth of her estate, and while space prevents reference to all the testimony, suffice to say that almost all the other evidence is cumulative to substantiate the conclusions here reached. The court finds that the legatees of the 4th and 7th Provisions of the will are Sydney Bartels, Albert Duckworth and Walter Duckworth, share and share alike.

It appears that the parties, by reason of the decision in **Estate of DiSanto, 142 Oh St 223,** have stipulated and agreed that the U. S. Savings Bonds for which Emma Duckworth provided alternate payees are the property of each alternate payee as the case may be, and the court approves delivery of said bonds to the appropriate payee in each case.

As to the bank account in the sum of $1,100.00, deposited in the names of Emma Duckworth or Oneida Roller in The First Huntington National Bank of Huntington, West Virginia—it appears that same was not a joint and survivorship account, and the court finds that Emma Duckworth was the owner of one-half thereof at the time of her decease. The Executrix, Sydney Bartels, has a duty to collect as part of the estate of Emma Duckworth, deceased, one-half of the balance of said account as it stood at the time of the decease of Emma Duckworth, and account for same as part of the assets of the estate for which she is fiduciary. The court fails to find sufficient evidence to establish any trust that would control this account or direct its proceeds other than as hereinbefore stated.

An entry may be prepared in accordance with this opinion with exceptions saved to all parties.