In the Matter of the Estate of MARGARET L. STEIMES, Deceased.

Surrogate's Court, Monroe County, January 26, 1934.

*Truesdale Clarke*, for the executor.

*George J. Nier*, for the residuary legatees.

FEELY, S.   On this judicial settlement doubts have arisen as to just what testatrix meant by two phrases in her last will dated July 11, 1931.   Having some familiarity with legal phraseology, she drafted this will for herself.   After several bequests of money, testatrix by the eleventh paragraph gave to her two sisters named, to be equally divided between them, " all my household furniture, bedding, linens, wearing apparel, and all my personal effects; " and by the twelfth paragraph she devised and bequeathed all the rest, residue and remainder of " my property, both real and personal, of every kind and description   *   *   *   to my brother, Peter A. Vay, and my sisters, Minnie A. Brutsche and Teresa

Schreiner, their heirs and assigns, to be equally divided between them."

The first question is whether two diamond rings — one with a single stone, the other with two — pass under the words " personal effects " in the eleventh paragraph, or belong in the residue passing under the twelfth paragraph. The second question is whether the death of Peter A. Vay in the lifetime of testatrix, leaving a widow and five children him surviving, requires the words " their heirs and assigns " to be taken to mean that testatrix thereby intended a division *per capita*, rather than *per stirpes*.

1. The word " effects " appears to be of continental origin, out of the root sense of " direct result," intending to stress the readiness with which this property could be turned into good money, as distinct from the slower or less fluid possessions; and hence this word has come to mean movable or personal property more than it does property in general, as it also does. So Europeans use the word " effective " to signify money having intrinsic value, as distinct from fiat or " rubber " currency; and also to mean coin or specie, as distinct from paper currency. In France an " effet " is a bill of exchange; " effets " means goods, movables, chattels, especially with the addition of other words, as " effets mobiliers; " or " effets publics " which means funds or stocks. Like other words, this one also takes on color from its surroundings. The addition to it of " personal " may be but another example of those twin names, one from English usage and the other from the continental, which, like " will and testament," " wearing apparel " (*infra*), etc., originated in the mixture of the two tongues after the Normans crossed the channel. This word " personal," however, properly meant things appertaining to the body or the individual; and hence came to mean movable property.

So when the word " effects " is used alone, or without restriction or qualification in its context, as in a legacy of " all my effects," it carries all the movable or " personal " property of the testator. (*Gallagher* v. *McKeague*, 125 Wis. 116; *Neiheisel* v. *Toerge*, 4 Redf. 328, 340.) In the case last cited it is said to be our equivalent to the German word " eigenthum." But alone, " effects " never includes land, even though there be added to the term " effects " the words " of what nature or quality so ever." Obviously, the phrase " all my effects real and personal " carries land. This is but another application of the old rule of *ejusdem generis*, whereby the general words in any such phrase are qualified by their more specific companions. " Where the testatrix uses words to enumerate a certain definite class of things, and then follows with general words, the enumerated things show the kind of things she had in

mind when she employed the catch-all general phrase." (*Matter of Thompson*, 218 App. Div. 130; affd., 245 N. Y. 565.) There, after several bequests to others of specified pieces of valuable jewelry, a legatee was given distinct articles of clothing and "all my toilet articles of every description, and the clock that generally stands at my bedside, and also all my furs and dresses and other purely personal effects (other than cash or securities) not herein specifically given or bequeathed to any one." This legatee claimed, as against the general residuary legatee, a large quantity of valuable jewelry that was not specified in the will. The court held that by the use of the words "other purely personal effects," this testatrix intended to give this legatee only such personal property as came in the same class as furs and dresses; and that she did not mean to include jewelry, paintings, bric-a-brac or automobiles. The court also refers to the other phase of this rule, that the context includes a residuary clause, if there be one in the will, for in its presence there is no leaning to so read as to avoid intestacy. "Where * * * there is a residuary clause, the whole will must be read as one instrument and such a construction is not to be given a preceding clause as to frustrate the intention of the testator to give the residue to a different beneficiary." (*Matter of Thompson, supra*, citing *Matter of Reynolds*, 124 N. Y. 388, 398.) So, whether the word "effects" is preceded or followed by words of narrower import, it will be confined to the narrower sense, if the legacy be not a residuary one. (*Matter of Lippincott*, 173 Penn. St. 368; *Brandon* v. *Yeakle*, 66 Ark. 377, 381; *Barney* v. *May*, 135 Minn. 299.)

In *Matter of Jones* (128 Misc. 244) a medical doctor devised and bequeathed to his wife his homestead residence property, by street and number, "together with all household goods and furniture, personal effects and contents therein, of every name and nature;" and the residue of this estate he gave to his sons. For his office he had used three rooms in this homestead residence, and used an auto to make his calls. His medical equipment, instruments, etc., was held to pass to the sons, but both autos to the widow.

A different result was consistently reached in applying this rule of *ejusdem generis* to a policy insuring against loss of "personal effects, including toilet articles, scientific apparatus and jewelry," where this context was held not to include the artificial apparatus commonly called "a set of false teeth." (*Rubin* v. *Globe & Rutgers Fire Ins. Co.*, 119 Misc. 532.)

In *Tighe* v. *Nelson* (2 Dem. 633) a bequest to one of bedroom furniture and a portrait was followed by a legacy to another of a house "and also the following personal property and furniture

therein," enumerating an armchair, looking glass and mantel ornaments; " and all my household furniture and effects not hereinbefore specifically bequeathed." This latter legatee was held entitled to take, under that language, a pocket book, a diamond stud, a gold thimble and other articles *ejusdem generis*, against the protest of the residuary legatee. Such legacies of " house and contents," like *Matter of Delaney* (133 App. Div. 409), differ widely from the one now in hand, although they also come under the *ejusdem generis* rule; and this court recently held in *Matter of Miller* (unreported; affd., 239 App. Div. 883), that personal jewelry in the house did not pass as " contents."

The restrictive particulars in the context of the will now in question — aside from the general or presumably omnibus class of property exclusively given by the words, " all the rest, residue and remainder of my property, both real and personal, of every kind and description "— are " household furniture, bedding, linens, wearing apparel." These woven things and " wearing apparel " tend to confine the rest of the clause, " all my personal effects," to cloths and clothing, because the term " wearing apparel, although itself a general term, is much more clear and specific than is the term " personal effects." This term, " wearing apparel," is said to derive from two sources: " apparel " from the Latin " ad," meaning " to," and " par," meaning " equal," to point out the means by which outwardly one keeps even or in line with his group or class, mainly by uniform dress, modernly expressed by " keeping up with the Joneses." Here again we have another of those bi-lingual pairs, for " wearing " is said to come down from an Anglo-Saxon root meaning to carry on or about the body, with the " effective " or derivative sense of the thing so worn becoming, in the end, " worn out " or consumed by such use. Some cases define " wearing apparel " as including, in its popular sense, all articles of dress generally worn by persons in the calling and condition of life and in the locality of the person in question. (See *Ohio Valley Bank* v. *Minter*, 108 W. Va. 58.)

As to " wearing apparel," Surrogate SLATER said in 1919 that " The cases in the several States of the Union are not at all in accord upon what should be included as ' wearing apparel ' of a man or woman." (*Matter of Palmer*, 109 Misc. 207.) In that case testatrix, after having named many small things in many clauses in her will as gifts to many friends and relatives, gave to three relatives equally certain named personal property, including " my wearing apparel." The court said: " the question submitted is — What is ' wearing apparel ' ? Wearing apparel usually means clothing and garments protecting a person from exposure. The personal prop-

erty in question consists of earrings, finger rings, bar breast pins, a watch and chain and a bracelet, of considerable value." The fact testatrix had named many small things as gifts to several legatees led the court to remark: " Had she intended to give these jewels * * * she undoubtedly would have said so. * * * There is no reason why a special or technical meaning, rather than the ordinary meaning of ' wearing apparel ' should be given to the term as used in this will. Therefore, I shall follow the ruling in *Dox's Estate* (30 Penn. Super. Ct., 393) as being sound and reasonable." The court held that the gold watch and chain passed as wearing apparel to the three relatives, but that the residuary legatee took the other jewelry. The report does not set out the specific ground on which the watch and chain were excepted from the other articles mentioned.

In *Dox's Estate* (*supra*), after sixteen legacies of money, and three others of specified articles, the legacy in question gave to a lady " and her daughters my wearing apparel." Under this clause they claimed a diamond ring, a watch and chain, some brooches, and a pencil, besides the clothing. The court said this claim might be supported by cases under exemption or tariff laws, or on the liability of a common carrier (See *McCormick* v. *Hudson River R. R. Co.*, 4 E. D. Smith, 181) — although even in these there is a marked discordance in decision — yet a last will is not to be read as are such statutes or rules of liability. The words " wearing apparel " usually and ordinarily mean the garments testatrix wore for her own use, rather than the special, technical meaning suggested by the courts in construing statutes and contracts. Had she intended to give those three legatees, who were not relatives of hers, this jewelry, " not necessarily used with clothing," she would doubtless have so specified it. To her own kindred she gave the residue of her estate of whatsoever nature and wheresoever situate, and they were intended to have everything not theretofore specifically willed. The court concluded that this jewelry, without a more special description, or where the doubt as to her intention is so grave, would naturally be included in the residuary, rather than in the one limited by the uncertain words " wearing apparel," under which the claim is made.

The *Palmer* case also cited *Gooch* v. *Gooch* (33 Me. 535), where the court held that a simple bequest of " wearing apparel " did not include a watch that testator habitually carried. Here a distinction is drawn between dress and sundry implements, or utilities that often are used with it. " Wearing apparel," the court said, " is vesture, garments, dress; that which is worn or appropriated to the person. Ornaments may be so connected and used with the wearing

apparel as to belong to it. There are implements, such as pencils and penknives, carried about the person, but not connected with the wearing apparel. These are not to be considered as clothing. A watch * * * not * * * an implement; * * * it more nearly resembles the pencil or penknife."

The *Gooch* case was followed in *Coffinberry* v. *Madden* (30 Ind. App. 360), where jewelry adapted to be worn with wearing apparel was yet not wearing apparel to be set off to a widow, under the statute. The court there said: " Though an article may unquestionably be a part of the wearing apparel of a man or woman which may be regarded as ornamental, or as serving some use in addition to that of ordinary vesture or clothing, yet if the chief and distinguishing characteristic of the article be to serve as an ornament, or to serve as a mechanism, any other purpose than that of clothing, or part of the clothing for the body or some portion of the body, it can hardly be regarded as coming within the meaning of ' wearing apparel ' in the plain or ordinary and usual sense."

Both of those cases cite the *Sawyer Case* (*Sawyer* v. *Heirs of Sawyer*) (28 Vt. 249), where question arose as to setting off certain things to the widow of an intestate, under the statute specifying " her wearing apparel and ornaments and her husband's wearing apparel." The decedent had been a purser in the United States navy, and was required to wear a uniform, sword and belt, etc. Under the head of his wearing apparel, the court refused to include his watch and chain, keys, seals, finger ring and his sword and belt; but there was set apart for her not only the uniform, but also the epaulets, because they were part of the coat, and also his bosom pin, because it was used to fasten the shirt together in front. (See, also, *Towns* v. *Pratt*, 33 N. H. 345; 66 Am. Dec. 726.)

In applying the *ejusdem generis* rule to this term, the absence of a residuary clause is significant as well as is the presence of qualifying words in the context. Thus, in a will without a residuary clause, where testatrix merely bequeathed " all my goods, wearing apparel of what nature and kind soever, except my gold watch," the court held the bequest passed all her wearing apparel and ornaments of her person, except her gold watch, and included household goods and furniture, but no other part of her estate. (*Crichton* v. *Symes*, [1743] 3 Atk. 61, 62; 26 Eng. Rep. 838.) Her excepting the watch impliedly included other jewelry.

While, therefore, it may be that this testatrix, Mrs. Steimes, had worn these rings, and that ladies often wear what is now called " costume " jewelry, and synthetic jewels are frequently a part of a costume or dress, the fact remains that these finger rings were more ornament than clothing; and that this testatrix must be taken

to have meant clothing, rather than such ornaments, by the words " wearing apparel," which is so much clearer and specific than are the words " all my personal effects," in the context of the will above quoted, especially as the will also gives all the rest of her property, real and personal, to others. These two rings, therefore, pass to the residuary legatees.

2. The residuary legacy to the three named persons, " their heirs and assigns," presents less ground for doubt than had been the case had it read to A, B and C " *and* their heirs and assigns;" and especially had it read " *or* their heirs," etc. Those three forms are generally the product of a non-professional hand — as was the will now in hand. Where neither " and " nor " or " appear, the presumption is that the words " their heirs and assigns " were intended to be words of inheritance or limitation, and not words of purchase, creating a joint estate in favor of such persons and their respective heirs. (*Matter of Tamargo*, 220 N. Y. 225, 229; *Matter of Wells*, 113 id. 396, 400.) So the word " assigns," in such cases, is a word of limitation, indicating that " the devisee or legatee is given the whole estate in the property, and incidentally the power of alienation thereof." (2 Davids N. Y. Law of Wills, 1316.) The statute (Dec. Est. Law, § 29) saved from lapse the residuary legacy to Peter A. Vay upon his death before that of the testatrix. By this section the property so devised or bequeathed is declared to " vest in the surviving child or other descendant of the legatee or devisee, as if such legatee had survived the testator and had died intestate." It is clear, therefore, that the one-third of the residue of this estate is to be divided among the five children of Peter A. Vay, who survived him, his widow not being mentioned in this saving statute; and the other two-thirds pass to Mrs. Brutsche and Mrs. Schreiner respectively.

Enter the decree in accord with this decision.