In re the ESTATE of Mildred
STENGEL, Deceased.

Ann WESTHOUSE, Petitioner-Appellant,

v.

Anna Mae SOUTHARD et al.,
Defendants,

and

Tower Grove Bank & Trust Company and
Anna Mae Southard, as Executors of the
Estate of Mildred Stengel, Deceased,
Defendants-Respondents.

No. 37769.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 27, 1977.

Edward C. Westhouse, St. Louis, for petitioner-appellant.

Dubail, Judge, Kilker & Maier, William C. Maier, Charles R. Judge, St. Louis, for defendants-respondents.

KELLY, Judge.

In this appeal from a judgment of the Circuit Court of the City of St. Louis the question for decision is whether the term "personal effects," as used in the context of the testatrix's will, must be construed to

include not only tangible personal property but also intangible personal property such as stocks, bonds and other items inventoried as assets of the Estate. The Circuit Court held they were not. We affirm.

Mildred Stengel, the testatrix, died on November 28, 1973, her last will and testament was filed in the Probate Court of the City of St. Louis on November 29, 1973, letters were granted, and Anna Mae Southard and the Tower Grove Bank and Trust Company were appointed co-executors thereof as provided in Article Fifth of the will. On January 24, 1974, an Inventory and Appraisement listing the assets of the estate and their fair market value as of the date of death of the testatrix was filed. On February 27, 1974, at the instance of the executors an order of partial distribution was granted. This litigation was instituted on December 5, 1974, by Mrs. Ann Westhouse, a legatee under the will, by the filing of a Petition for Determining the Interest of Legatees and for an Order of Distribution in the Probate Court of the City of St. Louis. Although Mrs. Westhouse alleged that she filed this Petition for and on behalf of herself and the other individual legatees mentioned in Article Third (a) of the will, she also alleged that they had refused to join her in the action and they have refused to join her throughout this litigation as party-petitioners. Following an adverse ruling in the Probate Court, Mrs. Westhouse (hereinafter "the Petitioner") took an appeal to the Circuit Court of the City of St. Louis where the Petition was tried de novo. Sections 472.200 and 472.250 RSMo. 1969. There again an adverse judgment was entered and this appeal followed.

The Petition here is in two Counts. In Count I Petitioner sought a determination of the interest of herself and the other legatees under Article Third (a) of the will to certain items inventoried as assets of the estate which the executors have refused to distribute to the Petitioner and the other legatees named therein. She also prayed that if the distribution of these assets could not be jointly made without material injury to the rights of the legatees thereto as individuals, that a sale of said items be ordered and the proceeds therefrom be divided between the legatees under the will according to their individual rights. Named as defendants were each legatee named in the will and the executors in their representative capacities.

Count II sought an order requiring the executors of the estate to inventory and value some sheets of piano music, the exact number of sheets being unknown to the Petitioner, but alleged "to be over one thousand," and to recover them from the possession of Caroline Wessbecker to whom they had been distributed as a part of Ms. Wessbecker's distributive share of the estate under Article Second (b) of the will. Alternatively, if the executors were unable to recover this sheet music, the Petition prayed that they be surcharged for the value of this sheet music.

An allowance for reasonable attorney's fees and costs of suit were prayed in each Count.

The Circuit Court, after hearing, entered findings of fact and judgment as follows:
". . . that the Will of testatrix admitted to probate is unambiguous, that the legacy provided in Article Third (a) bequeathed only tangible personal property located in the home of testatrix not otherwise disposed of in Article Second (a) and (b), and that said legacy was fully satisfied by the distribution effected in March, 1974 pursuant to the Order of Partial Distribution previously entered by the Probate Court.

"Alternatively, the Court finds that if the Will of testatrix admitted to probate is ambiguous, that her prior Wills making the identical residuary disposition of her estate fully evidences her intent. (sic)— to bequeath balance of all 'personal effects' etc., not just those coming from husband's estate.

"The Court further finds that the inventory filed in the Probate Court discloses an estate requiring the filing of a Federal Estate Tax Return on or before August 26, 1974, but because the residuary estate was devised and bequeathed to a tax

exempt organization no tax was payable. That petitioners (sic) delay until December 13, 1974 (sic) in instituting these proceedings prejudiced respondents and constitutes laches barring any recovery. "Court further finds that distribution of sheet music to the legatee of the piano constituted proper disposition thereof."

Judgment was entered that the Petition be dismissed and that judgment be entered in favor of the "Respondents" and against Petitioner on Counts I and II of the Petition.

On appeal the Petitioner presents to this court six Points Relied On. The initial Point charges that the Circuit Court erred in permitting the executors to make this a contested case between the executors and the Petitioner on the grounds that they are not an "interested party." The executors were not only a proper party, they were necessary parties. In a will construction suit all of the parties interested in the subject matter of the suit must be made parties thereto. *In re Cordes Estate*, 116 S.W.2d 207, 209[7] (Mo.App.1938). Not only were these executors made a party to this proceeding, but as executors they also had an interest in seeing that the will was properly construed and in conserving the assets of the estate for the purposes to which they were to be eventually devoted. *First Trust Co. v. Myers*, 239 Mo.App. 403, 188 S.W.2d 519, 522 (1945). There is no merit to this contention.

Petitioner's second Point attacks four of the findings of the Circuit Court on the grounds "there was no evidence introduced to even tend to prove these findings." The findings Petitioner contends have no evidence to support them are:

1) that the Petitioner was guilty of laches,

2) that the testatrix's intention was to bequeath only tangible personal property located in testatrix's home to the legatees named in Article Three (a) of the will,

3) that the partial order of distribution was fully ratified by the March 1974 distribution and precluded the petitioner from filing this will construction suit, and

4) that a prior will shows the intention of testatrix to bequeath all intangible property to the remainderman.

We find no finding that corresponds to the third "finding" under this Point in the findings of fact and judgment herein. While the Circuit Court did find that the legatees named in Article Third (a) of the will were unable to otherwise agree upon the selection of articles bequeathed thereunder and therefore agreed to draw numbers from 1 through 5 and in that order select and tag items in the home of the testatrix; that they met in March, 1974, at decedent's home and in the order drawn selected and tagged articles of their respective choices; that at the conclusion of this procedure there remained unselected certain sheet music which was thereupon delivered to Caroline Wessbecker as part of the bequest of the piano; and that no objection to this distribution was made until the filing of the Petition then before the court. However, at no place in the findings does the Circuit Court find that this constituted a ratification of that order of distribution by Petitioner. The facts there found were supported by the evidence.

Because of the decision we reach we find it unnecessary to dispose of sub-points 1 and 4 at this time but shall do so hereinafter.

In reaching our decision there were certain fundamental legal principles we found necessary to bear in mind. With respect to our function in reviewing the judgment of the Circuit Court we must review this case upon both the law and the evidence as in suits of an equitable nature, giving due regard to the opportunity of the Circuit Court to have judged the credibility of the witnesses. Rule 73.01, subd. 3(b). The decree or judgment of the Circuit Court should be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law; and the power

to set aside a decree or judgment on the ground that it is against the weight of the evidence should be exercised with caution and with a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc, 1976).

■ Because of the nature of this proceeding—a will construction case—it is necessary that the intention of the testatrix be ascertained, and if that intention is plain and unambiguous, it must govern, provided it is not contrary to law. If the will to be construed contains plain and unambiguous language courts give effect thereto. The function of the court is to construe the will as it is written by the testatrix and not to make or rewrite one for the testatrix under the guise of construction. The testatrix is presumed to know and intend the legal effect of the language she employs in her will, and courts give the words used by a testatrix in her will their plain and ordinary meaning. *First National Bank of Kansas City v. Danforth*, 523 S.W.2d 808, 816[1, 2, 3, 4, 5] (Mo.1975). We should, where possible, ascertain the testatrix's intention from the four corners of the will and construe it, if possible, to give effect to all of its provisions, and it is only when a will is read from its four corners that there exists doubt as to what the testator intended that resort may be made to rules of construction to aid in determining the intention of the testatrix. *Scullin v. Mercantile-Commerce Bank & Trust Co.*, 361 Mo. 337, 234 S.W.2d 597, 601–602[2–6] (1950).

The Petitioner, in a memorandum of law incorporated in the transcript on appeal, has stated: "It is petitioner's contention that there is no ambiguity in the Last Will and Testament of Mildred Stengel." The Circuit Court concurred in this and found no ambiguity. The issue though is the meaning of the term "personal effects" as that term is employed in article Third (a) of the testatrix's will which is:

"THIRD: (a) Balance of household goods, furniture, personal effects and automobile to CAROLINE WESSBECKER, ANNA MAE SOUTHARD, ANN WESTHOUSE, EMMA EBEL and YVONNE KRANKEL, or to the survivors of them, jointly, or as they may agree. Any items not distributed in accordance herewith shall be sold by my Executors."

Inventoried as assets of the estate, and the bones of contention here, were the following, together with their valuation:

```
Series E and H government
  bonds ................$33,546.24
Stocks—682 shares .......  6,219.14
Savings & Loan Accounts 20,204.96
Cash ...................    206.28
Jewelry:
  1) 1 lady's pocket watch
  with chain ......$ 50.00
  2) 1 metal ring with large
  white center stone and 8
  smaller white stones sur-
  rounding it ..... 400.00   450.00
Coins and Currency ......   114.50
```

In addition to the foregoing, furniture and the contents of a breakfront in the home of the testatrix at 4026 Arsenal Street, St. Louis, were inventoried and valued at $350.00.

According to the uncontradicted evidence, after the order of partial distribution of February 27, 1974, the executors and the legatees named in Article Third (a) met at testatrix's home sometime in March, 1974, and distributed the household goods and furniture there among themselves, except for the contents of the breakfront which was bequeathed to Lucille McKinney, a cousin of the testatrix, in Article Second (a). The distribution was accomplished by each legatee under Article Three drawing a number from 1 to 5 and then in that order choosing an item of household goods or furniture the particular legatee wanted. The item was then tagged so that it could be identified as belonging to one of the legatees. During this procedure no mention was made concerning the distribution of the assets here under discussion, other than the sheet music, by anyone. Ms. Southard testified that she recalled that Mrs. Westhouse had made a passing reference to it during that day, but because Ms. Southard was in a hurry to get to her shop, she told her that could not be done that day. The first the executors knew there

was any question about these items was when they were served with the papers following the institution of this proceeding.

The term "personal effects" has been construed by the appellate courts of this State on only one prior occasion in a case involving a will.[1] In *Barnes v. Maddox*, 245 S.W. 208 (Mo.App.1922) the testatrix bequeathed to a friend for the purpose of distribution in accordance with memoranda previously given "all my household goods, pictures, furniture, chinaware, silver, jewelry, clothing, heirlooms and personal effects and property." The court in *Barnes* held that the testatrix did not intend to bequeath to her friend as "personal effects" government bonds or money she had amounting to something in the neighborhood of $900.00. The court said, l. c. 210:

"She makes it very clear, we think, that by item 8 she only intended to dispose of household goods and such other property and effects as might be termed keepsakes, tokens and remembrances."

In ascertaining the intent of the testatrix in *Barnes* the court made reference to item 7 of the will wherein the testatrix had devised to her friend absolute title in fee simple to a portion of certain lands owned by the testatrix and concluded from this devise that had the testatrix intended that her friend have the government bonds and note in issue, the testatrix would have insisted that these items be included in that item of her will.

■ It is our opinion, based upon our research, that the term "personal effects" when employed in a will enjoys no settled technical meaning and, when used in its primary sense, without any qualifying words, ordinarily embraces such tangible property as is worn or carried about the person, or tangible property having some intimate relation to the person of the testator or testatrix. We do not, however, opine that where it is required by the context within which the term appears that it might not enjoy a broader meaning. Blacks' Law Dictionary (4th Ed.) defines the term as "Articles associated with (the) person, as property having more or less intimate relation to (the) person of possessor; 'effects' meaning movable or chattel property of any kind." Cases from other jurisdictions have defined the term similarly and the primary theme running through these definitions is the intimate connection with the person.[2] Anno. 30 A.L.R.3rd 797 et seq.

In attempting to ascertain the meaning of the term here we, as has been done in other cases, look at the testamentary plan as a whole to discover what the testatrix intended the term "personal effects" to mean in the context of her last will and testament.

In Article First the testatrix directed her executors to pay her lawful debts, including the costs of her last illness and funeral, an "at the expense of my Estate" that a grave marker similar to the one marking the grave of her deceased husband, "William C. Binder," be provided and that her name be inscribed thereon as "Mildred Binder."

Article Second consisted of a number of specific bequests. To her cousin, Lucille McKinney, she bequeathed the contents of her breakfront; to Caroline Wessbecker, her piano and $3,000.00; to William and Anna Mae Southard, $5,000.00; to her aunt, Emma Ebel, $1,000.00; to George and Yvonne Krankel, $2,000.00; and to the United Church of Christ (Evangelical) of Columbia, Illinois, $1,000.00. Coupled with

---

1. In *Utchen v. American Casualty Co. of Reading, Pa.*, 356 S.W.2d 102, 104[2] (Mo.App.1962) the term "effects" was defined in an action on a personal effects insurance policy.

2. *Estate of Johnson*, 5 Cal.App.3d 173, 84 Cal. Rptr. 914, 918[2] (1970); *In re Douglass's Estate*, 70 Cal.App.2d 279, 282, 289, 161 P.2d 66, 68, 69[2] (1945); *In re Sorensen's Estate*, 46 Cal.App.2d 35, 38, 115 P.2d 241, 243[6] (1941); *Mokros v. Blackman*, 312 Ill.App. 346, 38 N.E.2d 514, 517[2] (1941); *In re Estate of Reitz*, 213 Kan. 534, 516 P.2d 909, 911[2] (1974); *Gaston v. Gaston*, 320 Mass. 627, 70 N.E.2d 527, 528[3] (1947); *In re Minniss' Will*, 200 Misc. 353, 107 N.Y.2d 35, 36[1] (1951); *In re Steimes' Estate*, 150 Misc. 279, 270 N.Y.S. 339, 341[1] (1934); *In re Jones' Estate*, 128 Misc. 244, 218 N.Y.S. 380, 381[1] (1926); and *In re Beisgen's Estate*, 387 Pa. 425, 128 A.2d 52, 56[8] (1956).

the bequest to the Southards was a request that they take charge of and care for testatrix's dog.

Article Fourth devised and bequeathed the rest, residue and remainder of her estate, real, personal or mixed and wheresoever situated, to the Monroe County Nursing Home in Waterloo, Illinois, for chapel improvements in memory of "William C. and Mildred Binder."

It is in this context that we attempt to discern the meaning intended by the testatrix when she employed the term "personal effects" in Article Third (a) of her Last Will and Testament.

Unlike her co-legatees under Article Third (a) Petitioner here received nothing by way of Article Second; the only bequest to her was that set out in Article Third (a).

■ We believe that it is quite clear that, except for the specific bequests made in Article Second and Article Third (a) of testatrix's Last Will and Testament, she intended the bulk of her estate should pass to the Monroe County Nursing Home as residuary legatee under Article Fourth "for chapel improvements" in memory of her husband and herself. The Circuit Court also concluded that this was her intent by its findings and judgment, and adjudged that the term "personal effects" in the context of her will was restricted to her personal effects located in her home and not otherwise disposed of by her in Articles Second and Third (a) of her Last Will and Testament, and we are firmly convinced that where the construction given an instrument by the trial court appears to be reasonable and consistent with the intent of the testatrix, we, as the appellate court reviewing the trial court's construction of said instrument, should not substitute another interpretation thereof even though it seems equally tenable. *Murphy v. Carron,* supra; *In re Platt's Estate,* 21 Cal.2d 343, 131 P.2d 825, 831 (1942).

We have already taken note of the testatrix's desire to establish a memorial for herself and her deceased husband in Article Fourth of her Last Will and Testament, and

it is in this light that the term "personal effects" should be construed. The personalty of this estate consisting of bonds, stocks, savings and loan accounts, cash, jewelry and coins and currency was valued at $60,-741.12. From this amount cash bequests totalling $12,000.00 have been distributed pursuant to the partial distribution order of February 27, 1974. What debts, if any, and other expenditures the executors have or will be required to make out of these assets pursuant to the directions of the testatrix contained in Article First of her will are not contained in this record and we do not know what remains in the estate but may assume that all of these yet remain in the absence of any evidence to the contrary.

■ We hold, as did the Circuit Court, that the testatrix employed the term "personal effects" in its primary sense, i. e., tangible personal property that is worn or carried about the person, or tangible property having some intimate relation to the person of the testatrix. Employed in this sense, the term did not include the bonds, stocks, savings and loan accounts, cash, coins and currency. *Barnes v. Maddox,* supra; *Mokros v. Blackman,* 312 Ill.App. 346, 38 N.E.2d 514, 517[2] (1941).

The only item remaining to be considered is the jewelry. Whether jewelry passes as "personal effects" is a question on which there is a split of authority. See *In re Gault's Estate,* 48 N.Y.S.2d 928, 929[1] (Sur. 1944); *In re Kordes' Will,* 192 Misc. 626, 82 N.Y.S.2d 499, 500[3] (1948); *In re De Paris' Estate,* 23 Misc.2d 1091, 202 N.Y.S.2d 760, 762[4] (1960); *Re Steimes' Estate,* 150 Misc. 279, 270 N.Y.S. 339, 340–345[1] (1948); and *In re Horner's Will,* 82 N.Y.S.2d 491, 493[3] (Sur.1948). Each case seems to be decided on its own peculiar facts.

■ The term "personal effects" as used in Article Third (a) comes after a bequest of the "Balance of household goods, furniture . . . ." and is followed by "and automobile." Employing the doctrine of ejusdem generis the Circuit Court could have found that the personal effects the testatrix intended to pass under this Article were "personal effects" in her home as might be

termed "keepsakes, tokens and remembrances." *Barnes v. Maddox*, supra. The record fails to establish that these two items of jewelry were worn as adornments by the testatrix or were kept by her as keepsakes, tokens or remembrances. During oral argument counsel for the respondent was asked where these items of jewelry were found when the inventory was conducted and he replied that they were found in a safe deposit box. Petitioner's counsel—her husband—did not contest this fact. We opine that the Circuit Court could reasonably conclude that this jewelry was not intended by the testatrix to be included in the term "personal effects" as employed in Article Third (a) of her Last Will and Testament and find no error in its so holding.

In view of our holding that the finding of the Circuit Court that it was the testatrix's intention to bequeath only tangible personal property located in her home under Article Three (a) to Petitioner and her co-legatees, whether the further finding that Petitioner was guilty of laches is moot and cannot affect the decision we have reached. Therefore we find it unnecessary to decide this sub-point of Petitioner's first Point.

In disposing of Petitioner's contention that the Circuit Court's finding that a prior will showed the intention of the testatrix to bequeath all intangible personal property to the remainderman, we consider it together with Petitioner's third Point, that the Circuit Court erred in admitting a prior will into evidence over her objection and considering it and basing its conclusions partially on its contents.

■■■■ The Circuit Court made it clear in its findings that in this court tried case this evidence was admitted and considered if testatrix's will was found to be ambiguous. The Circuit Court found that the will was not ambiguous, but, in an excess of caution, made an alternative finding in case the will should be found to be ambiguous. A trial court in a court tried case has wide latitude in the admission of evidence, and even in those instances where it concludes that the evidence is not admissible may, where the evidence is brief and not privileged, permit the same and any cross-examination relating thereto or evidence in rebuttal thereof and preserve same apart from the evidence received. Rule 73.01, subd. 1(a). Whether this evidence would have been properly admitted and considered had the will been found to be ambiguous we need not decide because we have concluded that the intention of the testatrix could be gleaned from the four corners of the document itself without the aid of extrinsic evidence. Having so found, the Petitioner could not have been prejudiced by the admission into evidence of this prior will and we so hold.

Petitioner's fourth Point, that the Circuit Court erred in *not* finding that the bequest under Article Third (a) of the testatrix's will bequeathed to Petitioner and the four other legatees named therein included both tangible and intangible personal property of the testatrix has already been decided hereinabove and found to be without merit in ruling on Petitioner's second Point.

The fifth Point presented by Petitioner, that the Circuit Court erred in finding that the distribution of the sheet music to Caroline Wessbecker under Article Second (b) of testatrix's will constituted a proper distribution is, in our humble opinion likewise without merit.

■■■ From the evidence, this sheet music was in the basement of the testatrix's home at the time the partial distribution of the household goods, furniture and personal effects of the testatrix took place. Although the Petitioner observed this sheet music in the basement at that time she made no claim to the sheet music other than to inquire of Mrs. Southard if she could have the "Tchaichkowsy." (sic) Due to Mrs. Southard's hurry to get to her shop, she told petitioner that it could not be done at that time. It was not until this petition was filed, approximately nine months later, that Petitioner made any inquiry about the sheet music. At some time in the interim the sheet music was distributed to Ms. Wessbecker along with the piano bequeathed to her under Article Second (b).

Petitioner has cited no authority in support of her position, but argues that the bequest of a "piano" does not include other property not specifically mentioned in connection with "piano" or includable within the definition of the word "piano." Although Petitioner alleged that there were approximately 1000 sheets of music she offered no evidence to support this allegation or that these sheets of music would comprise "personal effects," in the restricted sense of the term, or household goods or furniture. She has failed to prove that these sheets of music had any value whatsoever. Under these circumstances we hold that the Circuit Court's finding that these sheets of music were properly distributed under Article Second (b) to Ms. Wessbecker was not unreasonable and that this Point is without merit.

■ Petitioner's sixth, and final Point, is that the Circuit Court erred in not retaining jurisdiction for the later determination of attorney's fees. This Point, like Petitioner's prior Points, also lacks merit. Except in those instances where the construction of a will may affect the corpus of a trust estate, only the executor may be awarded attorney's fees in an action to construe a will. *Magruder v. Magruder*, 525 S.W.2d 400, 408[14] (Mo.App.1975); *First Trust Company v. Myers*, 239 Mo.App. 403, 188 S.W.2d 519, 522[6] (1945).

Judgment of the Circuit Court is affirmed.

SIMEONE, C. J., and GUNN, P. J., concur.