**BOATMEN'S FIRST NATIONAL KANSAS CITY, Respondent,**

v.

**Martha GLOBUS–RODRIQUEZ, et al., Appellants,**

**John E. Irwig, et al., Respondent.**

**No. WD 49016.**

Missouri Court of Appeals, Western District.

Sept. 20, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1994.

Application to Transfer Denied Dec. 20, 1994.

Charles M. Thomas, Kansas City, for appellant Globus–Rodriquez.

Michael W. Lerner, Overland Park, for respondents Irwig, et al.

J. Gary McEachen, Kansas City, for respondent Boatmen's First Nat.

Before ELLIS, P.J., and BERREY and SMART, JJ.

PER CURIAM:

This case involves the construction of a codicil to a will. Martha Globus–Rodriquez, Sarah Globus Hamrick, Alexander H. Globus and Laura Globus Day appeal from the trial court's grant of summary judgment in favor of John E. Irwig and Fred H. Irwig.

Judgment is affirmed.

Boatmen's First National Bank of Kansas City ("Boatmen's") is the corporate trustee of a trust created by the second codicil to the will of Henry Flarsheim. The trust was created for the benefit of Mr. Flarsheim's daughter, Martha Irwig. The codicil provides that after Martha's death, the assets in trust are to be distributed to "those of her now living children, who shall then survive her, share and share alike...." Only two of her three children were living at the time of her death, John and Fred Irwig ("the Irwigs"), the respondents to this action. Vivian, her daughter, predeceased Martha by some nineteen years. Vivian had four children, Martha, Sarah, Alexander and Laura ("the Globuses"), the appellants herein. The Globuses claimed the trust assets upon Martha's death. Boatmen's instigated this declaratory judgment action to resolve the claim of the Globuses.

Henry Flarsheim executed his will in 1936 at age 70. At that time, he was married to Florence Flarsheim. When the will was executed, the Flarsheims had four children, Robert (age 33), Martha (age 30), Louis (age 29) and Clarence (age 25). They also had two grandchildren by their daughter Martha, Vivian, born in 1931 and Fred, born in 1933. Martha later had another son, John, born in 1937. During the five years following the will's execution, Henry drafted three codicils to his will. The second codicil, executed in 1938, is at issue here. The purpose of this codicil was to set up a trust for the one-fourth share of his estate that his daughter was to inherit after his death, and upon his wife's death. Each of Henry's sons were to inherit their portions of the estate by outright distribution. Henry may have been concerned that his daughter's husband, Fred Irwig, or perhaps a possible future husband, might dissipate Martha's assets if her inheritance went to her outright. In the second codicil he provided that Martha's share of the estate, rather than going to her outright upon Florence's death, would be placed in trust for her, to be managed and distributed free from any control or marital interest of Martha's husband. Henry named Martha's three brothers to be the trustees. Boatmen's later became the successor trustee. Henry Flarsheim died in 1943. His estate passed in trust to his wife, Florence. Florence died in 1977. Martha executed her will in 1978 and died in 1992. Her daughter Vivian had predeceased her by nineteen years.

On March 15, 1993, Boatmen's filed a petition for declaratory judgment to obtain a declaration as to the meaning of the Martha Irwig Trust and how the remaining assets were to be distributed between the claimants, the Irwigs and the Globuses. On August 4, 1993, the Globuses filed a motion for summary judgment. The Irwigs filed a cross-motion for summary judgment. The Irwigs also filed a motion to strike the affidavit of Clarence A. Flarsheim. On January 4, 1994, the trial court entered a judgment granting the Irwigs' cross-motion for summary judg-

ment and denying the Globuses' motion for summary judgment. The court held that the Globuses were not entitled to take under the trust because Vivian Globus, their mother, was not living at the time of Martha's death, which was a requirement of the second codicil. The trial court also granted the Irwigs' motion to strike the affidavit. The Globuses appeal from the trial court's judgment.

In the Globuses' first two points on appeal, they claim that the trial court erred in granting summary judgment in favor of the Irwigs because the will and second codicil provided for a per stirpes distribution of the trust assets. The Globuses claim that the testamentary documents consistently and unambiguously provided for a "plan" of stirpital distribution. Thus, they claim that one-third of the trust assets should have been distributed to both John and Fred Irwig and one-third should have been distributed to the Globuses, giving each Globus claimant a one-twelfth interest.

█ Appellants rely primarily on two clauses from the will and second codicil in claiming their interest. Article V, clause (e) of the will provides in pertinent part:

In the event that any one or more of my said children shall not be living at the time of my wife's death, then the share or shares of such deceased child or children shall pass in equal proportions to their surviving brothers and sister (or brother or sister as the case may be), except that in case any such deceased child or children shall, at the time of my wife's death, have lineal surviving descendants, then and in that event, the share of my estate which would otherwise pass to such deceased child or children of mine, were they, he or she living, shall pass in trust per stirpes to their, his or her living lineal descendants as beneficiaries....

This portion of the will provides for a per stirpital distribution. As noted above, Henry executed three codicils after the original drafting of his will. The one pertinent to this litigation is the second codicil created to set up a trust for Martha's portion of the estate to prevent any dissipation of assets by Martha's current husband, or any future hus-band. Article IV of the second codicil provides:

The beneficial interest in and to any undisbursed balance of money or property remaining in this trust upon Martha's death, shall thereupon pass to those of *her now living children, who shall then survive her,* share and share alike, whose rights hereunder shall be subject to the same conditions, limitations and treatment as are required by the terms of clauses (e) and (f) at pages 4 and 5 of my said last Will and Testament of February 8, 1936, with respect to the rights of lineal surviving descendants of any deceased child or children of mine, surviving my wife's death, as in said clause (e) described, and the rights and beneficial interest of Martha's said *surviving* children hereunder and to this trust, shall be the same as those of lineal surviving descendants of my children as in said clause (e)....

(*Emphasis added*).

Appellants discuss in depth Missouri law on construction of wills explaining Missouri's statute of descent and distribution found in § 474.020, RSMo 1986 and detailing the presumptions that arise when a testamentary document is found to be ambiguous. The Globuses argue that their right to prevail is created by the language quoted above, beginning with the phrase "whose rights hereunder shall be subject to the same conditions ..." They point out that this language imposes qualifications on the transfers to Martha's "now living children, who shall then survive her." They argue that, rightly understood, Article IV of the Second Codicil takes the provisions of clause (e) of the will and applies them in their entirety to the assets of the trust created for Martha Irwig. While it is true that clause (e) creates a stirpital distribution, the bulk of clause (e) is dedicated to prescribing the operative and administrative aspects of the trust, such as distributions, age factors, and so on. The argument of appellants fails to recognize that the explicit should prevail over the implicit. If Article IV had not been explicit as to the identity of the intended beneficiaries upon Martha's death, the Globuses' arguments could be persuasive. However, in view of the

explicit nature of Article IV, it is necessary to conclude that the purpose of the invocation of clause (e) of the will in Article IV was to incorporate by reference the "conditions, limitations, and treatment" prescribed therein for the *administration of the trust* as to the beneficiaries. We disagree with the appellants' interpretation of the provisions. Reasonably understood in accordance with usual principles of interpretation, we find no ambiguity.

Missouri law provides that if testamentary documents contain unambiguous language, the courts must give effect to the plain language of the documents. *In re Estate of Stengel,* 557 S.W.2d 255, 259 (Mo.App. 1977). "The function of the court is to construe the will as it is written by the [testator] and not to make or rewrite one for the [testator] under the guise of construction. The [testator] is presumed to know and intend the legal effect of the language [he] employs in [his] will, and courts give the words used by a [testator] in [his] will their plain and ordinary meaning." *Id.* Wherever possible, the testator's intention is to be discerned from the four corners of the testamentary instrument and only when doubt arises as to the intention of the testator may the court resort to the rules of construction to ascertain the intent of the testator. *Id.*

The Globuses concede that summary judgment is appropriate in a will construction case when the will and other testamentary documents are unambiguous as to the contested matter. Henry Flarsheim's intention is clear from the plain language of the second codicil. He specifically stated that after Martha's death, the trust assets were to be distributed to her children which survive her. Vivian was seven years old, and Fred was five, at the time the second codicil was executed. The Globuses were not born for more than twenty years after the document was executed. Vivian died in 1973, nineteen years before her mother's death. Vivian's death cut off any interest to which she or her descendants might be entitled under the trust. The fact that Henry provided for a per stirpes distribution in the will in the event that one of his children died does not establish a "plan" of stirpital distribution that

is carried forward to all documents later executed. Nor does the language in the will make the terms of the second codicil ambiguous. The trial court correctly determined that the testamentary instruments were not ambiguous. Points I and II are denied.

The Globuses also assert that the trial court erred in striking the affidavit of Clarence A. Flarsheim because it set forth material facts and circumstances surrounding the testator at the time the will and its codicils were executed. The Globuses concede that extrinsic evidence is not admissible if no ambiguity is found to exist in the testamentary documents. *See Naylor v. Koeppe,* 686 S.W.2d 47 (Mo.App.1985). Because these documents are unambiguous, as discussed above, extrinsic evidence was not admissible in this proceeding. The trial court did not err in striking the affidavit. Point III is denied.

The trial court did not err in granting summary judgment in favor of the Irwigs. The judgment is affirmed.