In the ESTATE OF Helen STRAUBE, G. Lloyd Williams, Petitioner/Respondent,

v.

Raymond BARBER and Carole Descoteaux, Respondents/Appellants.

Nos. 74051, 74067.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 16, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 6, 1999.

Application to Transfer Denied
June 1, 1999.

**42**

Darryl L. Hicks, Warrenton, for appellant.

Mueller, Suddarth & Beck, David W. Suddarth, James D. Beck, for Descoteaux.

Beck, Tiemeyer & Zerr, P.C., Ronald R. Fralicx, St. Charles, for G. Lloyd Williams.

MARY K. HOFF, Presiding Judge.

Raymond Barber and Carole Descoteaux (collectively Appellants) appeal from a judgment construing a residuary devise to Virginia Williams "and her heirs" in Article III(C) of the Last Will and Testament (Will) of Helen Straube in favor of G. Lloyd Williams (Respondent), the husband of Virginia Williams. We reverse and remand.

On May 31, 1996, Helen Straube executed her Will which, in relevant part, provided:

*ARTICLE III:* All of the rest, residue and remainder of my estate, whether real, personal or mixed, of whatsoever nature and wheresoever situate, I give, devise and bequeath as follows:

A. One-half to my beloved son, RAYMOND PAUL BARBER, ... if he survives me; if not, to his children or adopted children in equal shares;

B. One-fourth to CAROLE ANNE DESCOTEAUX, ... if she survives me; if not, then to her children or adopted children in equal shares;

C. One-fourth to my sister, VIRGINIA WILLIAM[S], ... and her heirs.

Virginia Williams was married to Respondent. Virginia Williams died October 26, 1996, leaving Respondent, and no issue, surviving her. Helen Straube died November 29, 1996. On January 3, 1997, the personal representative filed an Application for Probate of Will.

Respondent filed a Petition to Construe the Last Will & Testament of Helen Straube (Petition to Construe).[1] He contended that, as Virginia Williams's surviving spouse, he was an heir entitled to the one-fourth share described in Article III(C) of the Will.

The trial court held an evidentiary hearing on the Petition to Construe and the Petition to Stay. Respondent and Alvin Lange, the brother of Virginia Williams and Helen Straube, testified at this hearing. The trial court overruled Appellants' objections to and considered these witnesses' testimony regarding Helen Straube's state of mind, intent, and circumstances as expressed by Helen Straube after the death of Virginia Williams. With respect to that testimony, the trial court concluded "Testatrix's statements were not so remote in time from the

1. Respondent also filed a Petition to Stay Distribution of the Residue of the Estate (Petition to Stay).

execution of her Will as to not be at least some substantial evidence as to her state of mind, intent and circumstances at the time she executed her Will."

The trial court subsequently entered judgment in favor of Respondent. Specifically, the trial court granted the Petition to Construe,[2] decreeing that "G. Lloyd Williams, in his capacities as the spouse and sole legal heir of the deceased's residuary devisee, Virginia Williams, take a full ¼ interest in the residue of the Estate of Helen Straube under Article III([C]) of her" Will. The trial court explained that

[I]n reaching the above decision, the Court is mindful of the rules of construction for Wills, including the rebuttable presumption that a devise to a person "and her heirs" makes the term "heirs" a word of limitation and not of purchase; however, the Court believes that said rule is the only rule of construction even arguably not in favor of the [Respondent] in this case and that [Respondent] has sufficiently rebutted and overcome that presumption. The Court believes that all other rules of construction for Wills favor [Respondent], including the Cardinal rule, the paramount rule, that a Court give controlling affect to the Testatrix's intent. The Court also believes that the following specific rules of law and of construction for Wills favor the [Respondent] in this matter:

1. The presumption against partial intestacies particularly when the residuary estate is involved;

2. That using the word "heirs" in a Will does not necessarily mean "children" or "issue", as it can also mean a "surviving spouse" pursuant to RSMo. [Section] 472.010(14);

3. RSMo. [Section] 474.430 provides that "All courts .... shall have due regard to .... the true intent and meaning of the testator".

The Court believes that it was the Testatrix's intent that a full¼ of the residue of her Estate go to [Respondent] if her sister, Virginia Williams[,] did not survive her. This finding is supported specifically not only by the inferences drawn from the Testatrix's statements as to her state of mind, intent and circumstances and other evidence adduced at trial, but also by the contents of the Will as a whole including that the Testatrix provided for contingent beneficiaries in the event of her death with regard to the other two residuary devisees. The Court therefore finds it reasonable to conclude that the Testatrix intended to provide for a contingent beneficiary for Virginia Williams'¼ share of the residue of the Estate in the event she predeceased the Testatrix.

This appeal followed.

In their first point Appellants contend the trial court erred in finding the devise to Virginia Williams did not fail. In support of this point, Appellants first urge the terms of Missouri's anti-lapse statute, Section 474.460 RSMo 1994, do not prevent the failure of the devise. Second, Appellants argue, the terms "and her heirs" in Article III(C) constitute words of limitation, rather than words of substitution or purchase, citing *Gregory v. Borders,* 345 Mo. 699, 136 S.W.2d 306, 308 (Mo.1939).

■■■ The devise to Virginia Williams may fail because she died before Helen Straube. "In the absence of statute or a contrary provision in the will, a legacy lapses by the death of the legatee in the lifetime of the testator." *Taylor v. Coe,* 675 S.W.2d 148, 150 (Mo.App. S.D.1984); *accord McComb v. Lyons,* 487 S.W.2d 16, 18 (Mo.1972) ("[u]nder the common law, where a devisee dies before the testator ... the provisions in their favor were void ... and their devises and bequests lapsed" (citations omitted)); *Estate of Renner,* 895 S.W.2d 180, 182 (Mo.App. E.D.1995)

2. The Petition to Stay was also resolved by the trial court's judgment. That matter is not before us on appeal.

(recognizing the "common law rule that a bequest lapses if the beneficiary dies before the testator"); *Royston v. Watts,* 842 S.W.2d 876, 877 (Mo.App. W.D.1992) ("the common law rule [is] that a bequest lapses if the legatee does not survive the testator"). Where, however, "under a will donees are to take ... as a class there is no lapse on account of the death of one or more, but the entire gift goes to the survivor." *Lomax v. Cramer,* 202 Mo.App. 365, 216 S.W. 575, 576 (W.D.1919).

■ We find Appellants' argument regarding Missouri's anti-lapse statute unpersuasive. That statute provides:

> [w]hen any estate is devised to any child, grandchild or other relative of the testator, and the devisee dies before the testator, or is treated as if he predeceased the testator, leaving lineal descendants who survive the testator by one hundred twenty hours, the descendants shall take the estate, real or personal, as the devisee would have done if he had survived the testator by one hundred twenty hours.

Section 474.460 RSMo 1994. The statute is inapplicable here because Respondent is not a lineal descendant of Virginia Williams. Virginia Williams died leaving no lineal descendants. Therefore, the anti-lapse statute does not prevent lapse of the legacy to Virginia Williams. *See Gregory,* 136 S.W.2d at 308 (finding similar provisions of the then-existing anti-lapse statute, Section 527 RSMo 1929, did not prevent the lapse of a devise to someone who "left no lineal descendants"); *Estate of Renner,* 895 S.W.2d at 182 (noting identical provisions of the then-existing anti-lapse statute, Section 474.460 RSMo 1986 required, in part, that the legatee leave "lineal descendants who survive the testator by 120 hours").

Appellants also contend in their first point that the trial court erred in finding the devise to Virginia Williams did not fail under the language of Article III(C). In particular, Appellants urge the terms "and her heirs" constitute words of limitation, indicating the quality of the estate transferred by will, rather than words of substitution, indicating the persons who were to take the transferred estate. To resolve this, we must look to the language of the Will.

■ "In construing wills, all technical rules of construction give way, and the court is to give full effect to the true intent and meaning of the testatrix from the four corners of the will." *Estate of Strick,* 934 S.W.2d 312, 314 (Mo.App. E.D.1996). "It is neither the probate court's nor this court's function to rewrite a ... will in order to effectuate a more equitable distribution or to impart an intent to the testatrix that is not expressed in the will." *Estate of Pettit v. Levine,* 657 S.W.2d 636, 643 (Mo.App. E.D.1983); *see also In re Estate of Stengel,* 557 S.W.2d 255, 259 (Mo.App. E.D.1977) ("The function of the court is to construe the will as it is written by the testatrix and not to make or rewrite one for the testatrix under the guise of construction."). If the "testator's intent clearly appears, it is to be given effect." *Estate of Boder,* 850 S.W.2d 76, 79 (Mo. banc 1993); *Ittner v. United Missouri Bank of St. Louis, N.A.,* 924 S.W.2d 40, 42 (Mo.App. E.D.1996); *In re Estate of Stengel,* 557 S.W.2d at 259.

■ If after reading the will, there exists "doubt as to what the testator intended [then] resort may be made to rules of construction to aid in determining the intention of the testator." *Ittner,* 924 S.W.2d at 42; *In re Estate of Stengel,* 557 S.W.2d at 259. Importantly, the court "must look to the language used within the entire instrument, not to the result of the distribution plan, to determine if an ambiguity exists." *Boone County Nat'l Bank v. Edson,* 760 S.W.2d 108, 111 (Mo. banc 1988); *Ittner,* 924 S.W.2d at 42.

■ The question whether or not an ambiguity exists in a will is a question of law. *Ittner,* 924 S.W.2d at 42; *In re Estate of Beare,* 880 S.W.2d 562, 565 (Mo.

App. E.D.1994); *Naylor v. Koeppe,* 686 S.W.2d 47, 49 (Mo.App. E.D.1985). The reviewing court makes its own determination of whether or not an ambiguity exists,[3] and "as to the meaning of the will." *In re Estate of Beare,* 880 S.W.2d at 565. When the issue is the construction of a will based upon the language used in the will, we do not give deference to the trial court's judgment. *Estate of Boder,* 850 S.W.2d at 79.

■ Here, we find no ambiguity in the Will. The language of Article III(C) clearly gives Virginia Williams a fee simple interest in one-fourth of the residuary estate. Unlike Articles III(A) and III(B), Article III(C) contains no express disposition of that interest should Virginia Williams die before Helen Straube. Upon the death of Virginia Williams during Helen Straube's lifetime, the Article III(C) devise fails and, pursuant to RSMo 474.465 1994, goes to the two other residuary legatees.

■ "The testatrix is presumed to know and intend the legal effect of the language she employs in her will, and courts give the words used by a testatrix in her will their plain and ordinary meaning." *In re Estate of Stengel,* 557 S.W.2d at 259. Only if the context of the will indicates a different meaning may words in a will be understood in a way other than "in their primary, ordinary sense." *Estate of Fleischmann v. Fleischmann,* 723 S.W.2d 605, 608 (Mo.App. E.D.1987).

Since the early part of this century, the Missouri Supreme Court has stated

> the general rule is that the word "heirs" has a "technical" or "artistic" meaning in wills.... Ordinarily it is [a] word of limitation as contradistinguished from one of purchase.... "The word 'heirs' will be considered as a word of limitation, and not of purchase, unless the will shows clearly that it is used to designate a new class of beneficiaries."

*Eckle v. Ryland,* 256 Mo. 424, 165 S.W. 1035, 1041 (Mo.1914) (citations omitted);

*accord Garrett v. Damron,* 110 S.W.2d 1112, 1116 (Mo.1937) (noting it is presumed that "the term 'heirs' is used as a word of limitation").

■ When the devise is to one individual "and his or her heirs," the reference to "heirs" is clearly used as a word of limitation and the devise is to the named individual in fee simple. *Gregory, supra; Roberts v. Crume,* 173 Mo. 572, 73 S.W. 662 (Mo.1903); *see also Peters v. Briska,* 191 S.W.2d 993, 997 (Mo.App. E.D.1946) (noting "it is true that a bequest to [testator's] wife by name and her heir or heirs standing alone would be an absolute bequest"). In *Roberts,* the Missouri Supreme Court concluded a devise of real estate to testator's daughter "and to her heirs" gave the daughter "and her heirs all the real estate which the testator then owned, and vested the fee in her absolutely upon his death." *Roberts,* 73 S.W. at 662, 663. In *Gregory,* the Missouri Supreme Court concluded that a provision in a will stating the residue of the estate shall go to testator's wife "to hold to her and her heirs forever" constituted "mere words of limitation, indicating the quality of the estate attempted to be devised and not the persons who are to take it." *Gregory,* 136 S.W.2d at 308. The Court found the will not ambiguous and concluded the devise to the wife failed because she predeceased testator and left no lineal descendants. *Id.* at 308, 309.

In cases where courts have found the term "heirs" means a new class of beneficiaries, rather than the giving of a fee simple estate, the relevant will provisions have included more than a devise to an individual and his or her heirs. In *Jarboe v. Hey,* 122 Mo. 341, 26 S.W. 968 (1894) the Missouri Supreme Court found the following devise was to a class of persons consisting of the heirs of Charles A. Jarboe:

> (8) Should the said property so conveyed to the said John F. Jarboe in trust as aforesaid never be conveyed or transferred to the said Charles A. Jarboe

**3.** *Ittner,* 924 S.W.2d at 42.

during his lifetime by the said John F. Jarboe, or his successor in this trust, then, in the event of the death of said Charles A. Jarboe, said John F. Jarboe, or his successor in this trust, shall convey and transfer said property, and all proceeds, rents, and profits of the same remaining in his hands, to the *heirs* of said Charles A. Jarboe.

*Jarboe,* 26 S.W. at 970, 968 (emphasis added). In *Eckle,* the Missouri Supreme Court concluded the use of "or to their heirs" in the following devise was a reference to a new class of beneficiaries, rather than the devise of a fee simple:

At the death of my son, if I, the said Eusebia N. Buford, be then living, then the said trustee shall use and appropriate the net rents, issues, and profits of said land for my use, and shall pay over the same to me, for my individual use, on my death, should I survive the said William M. Buford, and, on his death, should he survive me, the said trust herein provided for shall terminate, and the title to the said real estate and property shall go to and vest in my two other children, Legrand G. Buford and Florence I. Banks, one-third each, *or to their heirs,* should they or either of them, be dead, and the remaining one-third shall vest in my two grandchildren, Legrand Ryland and Buford Ryland, as joint tenants, and to their survivor, for life, with the remainder to my two other children, Legrand G. Buford and Florence I. Banks and their heirs, share and share alike, in fee simple forever.

*Eckle,* 165 S.W. at 1042, 1036 (emphasis added).

In Article III(C) of the Will, the devise of one-fourth of the residue of Helen Straube's estate was simply and clearly to Virginia Williams and her heirs. We believe the language indicates this devise was solely to Virginia Williams in fee simple. *Gregory, supra; Roberts, supra.* Because Virginia Williams died before Helen Straube, the devise to Virginia Williams fails. *Gregory,* 136 S.W.2d at 308.

The different language used by Helen Straube for the three residuary devisees also supports our interpretation Helen Straube did not intend Respondent to receive the devise in Article III(C) if Virginia Williams predeceased Helen Straube. Each of the devises in Articles III(A) and III(B) is to a named individual, followed by the following language: "if he [or she] survives me; if not, to his [or her] children or adopted children in equal shares." These devises clearly demonstrate Helen Straube contemplated and knew how to address the possibility that a legatee would predecease her. *See Estate of Renner,* 895 S.W.2d at 182 (noting testator "knew about and used" language to override the antilapse statute in one part of the will but not in another part). The very next devise, in Article III(C), is only to "my sister, VIRGINIA WILLIAM[S], ... and her heirs." The omission of a specific devise to Respondent if Virginia Williams should predecease Helen Straube is significant. We find that both the language in Article III(C) and the language used throughout Article III support our determination that Helen Straube intended to give a fee simple to Virginia Williams and did not intend Respondent to receive the devise if Virginia Williams predeceased Helen Straube.

The question then becomes, to whom does the one-fourth residuary interest set forth in Article III(C) pass? At the time Helen Straube executed her will, a Missouri statute provided in relevant part that,

2. Except as provided in section 474.460, if the residue is devised to two or more persons and the share of one of the residuary devisees fails for any reason, his share passes to the other residuary devisee, or to other residuary devisees in proportion to their interest in the residue.

Section 474.465 RSMo 1994. This statutory provision "prevents a residuary lapse and intestacy by passing that [residuary] portion proportionately to the remaining [residuary] legatees." *Royston,* 842 S.W.2d at 879 (discussing the identical provisions of Section 474.465.2 RSMo 1986).

■ This statute applies to the circumstances here. Article III devised the residue of Helen Straube's estate to three persons, including Virginia Williams. Any failure of the devise to Virginia Williams, as set forth in Article III(C), results in application of the provisions of Section 474.465.2 RSMo 1994. Therefore, we find the devise to Virginia Williams passes to the other two residuary devisees in proportion to their interest in the residue.

■ In their second point, Appellants contend the trial court erred in admitting the testimony regarding Helen Straube's intent in drafting the Will. Because we find no ambiguity in the Will, we will not further address this point. *See In re Estate of Stengel,* 557 S.W.2d at 262. When the words in a will are clear, "extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge or contradict this language." *In re Estate of Sidebottom,* 327 S.W.2d 270, 278 (Mo. 1959); *Estate of Fleischmann,* 723 S.W.2d at 608.

Judgment reversed and remanded for entry of judgment consistent with this opinion.

GARY M. GAERTNER, J., and RHODES RUSSELL, J., Concur.