In the ESTATE OF Marcus J. FLEISCH-MANN, deceased, Ann Harvey, Personal Representative of the Estate of Josephine A. Fleischmann, deceased, Appellant,

v.

Norman M. FLEISCHMANN, Personal Representative of the Estate of Marcus J. Fleischmann, deceased, and Norman M. Fleischmann and Shirley Fleischmann, Respondents.

No. 50696.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 27, 1987.

P. Dennis Barks, Herman, for appellant.

Gael D. Wood, Washington, R. Brooks Kenagy, Steelville, for respondents.

CRANDALL, Judge.

Plaintiff, the personal representative of the estate of Josephine A. Fleischmann (wife), brought this action against the personal representative of the estate of Marcus J. Fleischmann (husband), who predeceased wife. Plaintiff appeals the judgment of the trial court, in a court-tried case, which held that certain personal property of husband did not pass to wife pursuant to his will. We affirm in part and reverse and remand in part.

Husband and wife were near retirement age when they married in 1964. Prior to their marriage, they executed an antenuptial agreement which provided in pertinent part:

> Marcus J. Fleischmann and Josephine A. Zinn hereby declare it to be his and her intention and desire that during their marriage each of them shall be completely independent of the other as regards the enjoyment and disposal of all property which is owned by each of them at the time of their marriage, and this is to also apply, although the form of the property might change by way of exchange of property or the sale of property and the reinvestment of the proceeds thereof. This agreement is not intended to apply to money or property which the parties may accumulate during their marriage ... This agreement is not to be construed so as to prevent one party hereto making the other party hereto a beneficiary under his or her will.

Neither party listed the property owned at the time of their marriage. Shortly after the marriage, husband executed a will which contained the following provision:

> ARTICLE FOUR: In the event that I predecease my wife, Josephine A. Fleischmann, then I will and bequeath unto my said wife all of the household and kitchen furniture, linens, dishes, utensils and lawn tools, and also the automobile which I may own at the time of my death, the same to be her absolute property. Any property, either real, or personal, which has been accumulated since my marriage to Josephine A. Fleischmann, I hereby will, bequeath and devise to my wife, Josephine A. Fleischmann, the same to be her absolute property.

The will also named husband's three children from a prior marriage as his residuary legatees and bequeathed $1,000 to Zion Lutheran Church.

Husband died on January 15, 1982. Husband's son, Norman Fleischmann, was appointed personal representative of the estate. The inventory of the estate listed various items of personal property; cash and bank accounts in the amount of $14,-939.83; 15 bonds with a face amount of $1,000 each; and a promissory note of $3,500 with accrued interest of $564.32, dated July 3, 1962 and made payable to husband. The total value of the personal property available for distribution to the legatees was $33,439.83.

On September 7, 1984, wife filed a petition to discover assets, alleging that, two months prior to his death, husband had transferred money to a savings account held jointly with his son, Norman; and that this transfer was in fraud of her marital rights. Wife died on March 1, 1985. On March 13, 1985, the personal representative of wife's estate filed "Objections to Proposed Order of Distribution" which challenged the distribution of husband's personal property to his children as being contrary to the Article Four of his will in which he bequeathed all of his personal property to his wife.

The court heard both actions together. Evidence consisted of documents submitted to the court. The parties also stipulated, orally and in writing, that husband's son, Norman, had borrowed $10,000 during the marriage. They stipulated that the source of this money was a savings account of $5,100 owned by husband prior to the marriage which he continued to hold during the marriage in his name alone. The account had grown to $10,135 at the time the money was withdrawn and loaned to Norman. Norman repaid the $10,000 plus $333 interest on October 5, 1981. On November 13, husband opened a new account in the amount of $11,397.25 which was titled jointly in his and Norman's names. This bank account was not listed as an asset of husband's estate in the final accounting.

The trial court found that the bank account was the property of Norman "as the surviving joint account owner" and not part of the assets of the estate. The court based its decision on the findings that the clear intent of the parties was to keep their property separate, as evidenced by the antenuptial agreement, and that the "interest or growth of pre-marital separate property" was not property "accumulated during their marriage." The trial court also overruled the "Objections to the Proposed Order of Distribution."

Plaintiff raises three points on appeal. She alleges: (1) that the trial court erred in overruling her objections to the proposed order of distribution; (2) that the trial court erred in finding that a transfer by husband to his son was not in fraud of wife's marital rights; and (3) that defendant failed to sustain his burden of proof that the proposed order of distribution was correct. We will address the question of which party bears the burden of proof under the other points raised on appeal.

Plaintiff asserts in her brief that "there is the total sum of $35,237.08 in controversy in this appeal." That amount consists of the following items:

| | |
|---|---|
| Bonds | $15,000.00 |
| Cash | $14,939.83 |
| Money transferred to son prior to death | $ 6,297.25 |
| | $35,237.08 |

She concedes that the $3,500 note and the bank account of $5,100 were clearly husband's premarital assets.

In her first point, plaintiff asserts that the trial court erred in approving the proposed distribution of personal property to the residuary legatees. She posits that the personal property in husband's estate was "accumulated" during the marriage, with the result that it should have passed to wife pursuant to husband's will.

In Article Four of the will, husband bequeathed to wife "any property which has been accumulated since my marriage." Defendant argues that husband's intent was clearly manifested in the antenuptial agreement. He asserts that property held solely in husband's name at the time of his death was his separate property pursuant to the antenuptial agreement and passed to his children. Plaintiff counters that any personal property acquired during the marriage, including interest on premarital assets, was property "accumulated" during the marriage which should have passed to wife.

■ Only when the language of a will is ambiguous or wanting in clarity is the court authorized to consider extrinsic evidence to ascertain testator's intent. *Matter of Morrissey*, 684 S.W.2d 876, 878 (Mo. App.1984). Words used by a testator are to be understood in their primary, ordinary sense, unless a different meaning is indicated by the context of the will. *Lehmann v. Janes*, 409 S.W.2d 647, 653 (Mo.1966).

■ In the instant case, it is necessary to refer to the antenuptial agreement only if the meaning of the term "accumulated" is ambiguous. Accumulate is defined as "to heap up in a mass; to grow or increase in quantity or number." Webster's Third New International Dictionary 13 (1981). The meaning of "accumulated," as used in the will, is plain and unambiguous. It is therefore unnecessary to resort to the antenuptial agreement to discern husband's intent.

Having determined that the meaning of accumulated is clear, it is necessary to determine which property was accumulated during the marriage. By way of analogy, we refer to the statutes pertaining to the dissolution of marriage for guidance in determining which property qualifies as marital property. Section 452.330(2) RSMo (Cum.Supp.1984) defines marital property as "all property acquired by either spouse subsequent to the marriage" with the following exceptions:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage.

Such property is "presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership...." § 452.330(3) RSMo (Cum.Supp.1984). The presumption of marital property is overcome only by a showing that the property in question falls into one of the statutory exceptions previously listed. § 452.330(3).

■ In the present case, a rebuttable presumption arises that any property acquired by husband during the marriage was marital property or property "accumulated" during the marriage. It is immaterial that the property acquired during the marriage was placed in husband's name alone. Once plaintiff makes a prima facie showing that property was acquired during the marriage, the burden of going forward with the evidence shifts to defendant to show that the property was separate property because it fell within one of the exceptions. Generally, the presumption of marital property is rebutted by tracing the actual asset or the source of the asset to property acquired prior to the marriage.

■ We first address the issue of the 15 bonds valued at a total of $15,000. The record before the court pertaining to the bonds consisted of photocopies of husband's account with an investment firm. The record reveals that the bonds in question were held solely in husband's name. All the bonds had been acquired during the marriage. A rebuttable presumption therefore arose that the bonds were marital property.

We have reviewed the record and find that, as a matter of fact, there is no substantial evidence to negate the presumption that the bonds were "accumulated" during the marriage. The source of the funds used to purchase the bonds cannot be traced satisfactorily to assets held by husband prior to the marriage. The bonds were therefore marital property which should have passed to wife in accordance with Article Four of husband's will. The trial court's holding that the bonds were not property "accumulated" during the marriage was not supported by the evidence.

■ We next consider the issue of the remaining $14,939.83 in cash and bank accounts. Here, again, the record is devoid of any evidence which would permit the tracing of these funds to husband's premarital assets. Absent the ability to sufficiently trace these assets, defendant has failed to rebut the presumption of marital property. The trial court erred in finding that the $14,939.83 was not property accumulated during the marriage.

We next consider the question of the note in the amount of $3,500 with accrued interest of $564.32. Plaintiff concedes that the note itself was "clearly identified" as an asset held by husband prior to the marriage. The amount of the note therefore passes in accordance with the provisions of the residuary clause of the will.

■ With regard to the issue of whether the accrued interest of $564.32 is marital or separate property, we note that it is not entirely clear from the briefs that plaintiff has adequately raised this issue on appeal. Although it is mentioned cursorily, the

$564.32 was not mathematically added into what plaintiff referred to as "the total sum of $35,237.08 in controversy."

Assuming the issue is preserved for our review, the amount of interest which can be identified as having accrued during the marriage would be marital property because it was property accumulated during the marriage. As such, that amount passes to wife pursuant to Article Four of the will. The trial court erred in not determining that the amount of interest which accrued during the marriage was husband's personal property which passed to wife.

In her second point, plaintiff alleges that the trial court erred in finding that a savings account in the amount of $11,397.25 was "the sole property of Norman Fleischmann as the surviving joint account owner." Of that amount, only $6,297.25 is in issue. Plaintiff concedes that "the lesser sum of $5,100 could be traced directly to an account or investment owned by Marcus prior to his marriage." She asserts that the sum of $6,297.25, which was primarily the interest earned on the original sum of $5,100, was property "accumulated during the marriage" which should have passed to wife's estate under the will.

The linchpin of plaintiff's argument is that husband transferred that amount of money to his son, two months before his death, in fraud of wife's marital rights. Section 474.150 RSMo (Cum.Supp.1984) provides in pertinent part:

Any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of his surviving spouse to share in his estate, shall, at the election of the surviving spouse, be treated as a testamentary disposition and may be recovered from the donee and persons taking from him without adequate consideration and applied to the payment of the spouse's share, as in case of his election to take against the will.

■ To determine whether husband's transfer of money into a joint savings account with his son was in fraud of wife's marital rights, there must be an intent and purpose on his part to defeat his wife's

interest in his estate. *Matter of Estate of LaGarce*, 532 S.W.2d 511, 515 (Mo.App. 1975). The burden of proving fraudulent intent falls on the plaintiff as the surviving spouse. *Id.*

Various elements have been recognized as indicative of an intent to defraud a spouse. They include: (1) whether there was consideration; (2) whether the transferor-spouse retained control over the assets; (3) whether the amount of the transfer was disproportionate compared to the total value of the estate; and (4) whether the transfer was made openly and with frank disclosure. *Id.* at 515–516.

■ A review of the evidence in the record and the reasonable inferences therefrom reveals that husband did transfer the money to his son shortly before his death by means of a joint bank account.

Although a transfer by way of joint account is unquestionably valid in the absence of fraud, undue influence, mental incapacity or mistake, nevertheless, the intrinsic nature of this type of joint survivorship is quasi testamentary, and that fact has been treated as a substantial factor for consideration concerning the intention of the transferor-spouse, with transfers of this general nature being referred to as only 'illusory.'

*Nelson v. Nelson*, 512 S.W.2d 455, 459–460 (Mo.App.1974) (citations omitted).

Here, plaintiff concedes and we agree that the $5,100 is clearly husband's separate property because he owned the account with that amount in it prior to the marriage. In accordance with the antenuptial agreement, that amount remained his separate property which he could dispose of as he wished. That amount was not transferred to his son in fraud of wife's marital rights.

The $6,297.25, however, had accumulated during the marriage; and consisted primarily of interest on the savings account of $5,100, in addition to approximately $1,000 from other funds belonging to husband, and $333 in interest which son paid on the loan of $10,000. We must consider this

transfer against the backdrop of the elements which are determinative of husband's intent to defraud wife.

There is no evidence in the record regarding consideration in return for the transfer. Husband did retain control over the money in the account by virtue of his joint ownership of the bank account. The record is silent as to whether wife was apprised of the transfer.

When reviewing the fourth element, i.e., whether the value of a particular transfer is disproportionate as compared to the value of the total estate, we must look to the particular circumstances of each case at the time the transfer was made. Wife and husband were married late in life and signed an antenuptial agreement. The record indicated that wife had sufficient funds of her own at the time of the marriage. There also was evidence that some assets acquired during the marriage were placed in joint names and some were placed in either wife's or husband's name alone. The personal property available for distribution from husband's estate was valued at $33,493.82. In view of our holding that any property acquired during the marriage was property "accumulated" during the marriage and therefore passed to wife, wife's estate will now receive over $30,000 from husband's estate pursuant to Article Four of his will. The $6,297.25 represents only about one-fifth of the amount which wife will receive from the estate. *Compare Nelson*, 512 S.W.2d at 460 (husband's transfer to his sister amounted to more than the total value of the estate remaining for his wife and child). Given the facts of this case, the transfer can hardly be regarded as "grossly disproportionate." *See Id.*

Here, husband merely made a gift to one of his children. There is no evidence that it was made furtively; and the amount is not large compared to the total estate. The trial court did not abuse its discretion in holding that plaintiff failed to meet her burden of proving that the transfer was in fraud of wife's marital rights. Plaintiff's second point is denied.

The judgment of the trial court awarding the joint bank account to Norman Fleischmann is affirmed. The judgment of the trial court awarding bonds valued at $15,000 and cash of $14,939.83 to husband's residuary legatees is reversed and remanded with directions to enter judgment consistent with this opinion. The case is further remanded to determine what portion of the $564.32 in interest on the $3,500 note accrued during the marriage and to distribute that portion to wife's estate.

PUDLOWSKI, P.J., and KAROHL, J., concur.